Commonwealth of Pennsylvania, Pennsylvania Labor Relations Board and Commonwealth of Pennsylvania, Intervening Appellee, *v.* American Federation of State, County and Municipal Employes, AFL-CIO, Appellants.

Argued June 4, 1975, before President Judge Bowman and Judges Crumlish, Jr., Kramer, Wilkinson, Jr., Mencer, Rogers and Blatt.

*Neal Goldstein,* with him *Richard Kirschner,* and *Markowitz & Kirschner,* for appellants.

*James L. Crawford,* Assistant Attorney General, with him *James F. Wildeman,* Assistant Attorney General, for appellee.

*Miles J. Gibbons, Jr.,* with him *Thomas H. Lane,* and *Morgan, Lewis & Bockius,* for intervening appellee.

OPINION BY JUDGE CRUMLISH, JR., July 31, 1975:

This is an appeal by the American Federation of State, County and Municipal Employees, AFL-CIO (the union) from a final order of the Pennsylvania Labor Relations Board which dismissed its exceptions to a nisi order denying the union's petition for a unit clarification to remove the job title of Automotive Equipment Mechanic II from a previously certified state-wide unit of first level supervisors to the rank and file Maintenance and Trade Employees unit. The practical significance of this removal would be to require the public employer, the Commonwealth, to bargain collectively with automotive mechanic II's as members of a rank and file unit,[1] whereas previously the public employer was only under an obligation to "meet and discuss" with first level supervisors concerning wages, hours and other terms and conditions of employment.[2] We must determine whether the findings of the Board that an automotive mechanic II functions as a first level supervisor within the meaning of the Public Employe Relations Act is supported by substantial

---

1. Section 401 of the Public Employe Relations Act, Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §1101.401 (Supp. 1974-1975).

2. Section 704, 43 P.S. §1101.704 (Supp. 1974-1975).

and legally credible evidence, and whether the conclusions based thereon are reasonable and not arbitrary or capricious.

In addressing this question, we cannot overlook the fact that the instant petition is a companion proceeding to the Commonwealth's petition to remove the job title of Automotive Equipment Foreman, the immediate supervisors of Automotive Mechanic II's, from the previously certified unit of first level supervisors which encompassed both positions. The Board found that the garage foremen were within the statutory definition of management level employees as above the first level of supervision, Section 301(16), 43 P.S. §1101.301(16) (Supp. 1974-1975), and thus exempted from the requirements of collective bargaining or "meet and discuss." On appeal, this Court affirmed the Board based, in part, upon evidence that these garage foremen responsibly direct the instant automotive mechanic II's who are certified as first level supervisors. *American Federation of State, County and Municipal Employees, AFL-CIO v. Pennsylvania Labor Relations Board,* 17 Pa. Commonwealth Ct. 83, 330 A. 2d 300 (1975).

Section 301(19), 43 P.S. §1101.301(19) (Supp. 1974-1975), defines a "first level supervisor" as "the lowest level at which an employe functions as a supervisor." A "supervisor," in turn, "means any individual having authority in the interests of the employer to hire, transfer, suspend, layoff, recall, promote, discharge, assign, reward or discipline other employees or responsibly to direct them or adjust their grievances; or to a substantial degree effectively recommended such action, if in connection with the foregoing, the exercise of such authority is not merely routine or clerical in nature but calls for the use of independent judgment." Section 301(6), 43 P.S. §1101.301(6) (Supp. 1974-1975).

The testimony of record in the instant case is extensive and can only be fairly characterized as contradictory regarding the actual work performed by an automotive

mechanic II. The union presented the testimony of four automotive mechanic II's who are employed in Department of Transportation garages. Their testimony reveals that they perform no supervisory functions within the meaning of Section 301(6), or, for that matter, their official job description.[3] They essentially do the same work as automotive mechanic I's (who are included within the rank and file unit), with the only apparent differentiation warranting the higher classification and salary increment being seniority and greater experience as mechanics. One of the union's witnesses, however, did admit that another automotive mechanic II employed in

---

3. Providing in part:

"*Definition*: This is skilled work in the supervision of the maintenance and repair of automotive and related equipment.

"Employes in this class participate in the supervision of a staff of skilled tradesmen and semi-skilled and unskilled laborers. They independently supervise a small unit in a variety of mechanical maintenance and repair operations. Employes assign work and supervise workers participating in more difficult technical phases. Work is performed under the supervision of a technical supervisor in the larger programs and under an administrative supervisor in the smaller ones. Work is reviewed by supervisors by observation of the quality and quantity of work.

"*Examples of Work Performed*: Plans, lays out, and assigns work to automotive mechanics and other garage workers; inspects work during progress and upon completion; makes road tests of equipment in diagnosing defects or in checking completed repair and adjustment work.

"Leads and instructs mechanics and helpers in the repair and maintenance of automobiles, trucks, tractors, rollers, graders, power shovels, compressors, and other construction and maintenance equipment.

"Assists in distributing job orders to subordinate mechanics and helpers.

"Keeps records of work performed and makes reports as required.

"Participates in the assembling and major overhaul of cars, trucks and related construction and maintenance equipment.

"Supervises and participates in the inspection of all motor vehicles for compliance with state regulations.

"Performs related work as required. . . ."

the heavy equipment section of his garage does no mechanical work, but assigns work orders to and inspects the work performed by mechanics under him. The Commonwealth, on the other hand, presented the testimony of four garage foremen employed by the Department of Transportation, the State Police, and the Department of Public Welfare. Each testified that the automotive mechanic II's working under them exercise independent judgment in formulating and assigning work orders to be performed, inspect completed work, authorize—without prior managerial level approval—overtime and temporary time off, participate in the job evaluation of the men under them, and otherwise function in full compliance with their job description.

Given this state of the record, we can only defer to the primary authority and expertise of the Board in determining the continuing appropriateness of an employee unit. *American Federation of State, County and Municipal Employees, AFL-CIO v. Pennsylvania Labor Relations Board, supra.* The union forcefully argues that the Board erred in failing to consider the appropriateness of the inclusion of automotive mechanic II's in a first level supervisory unit on a case-by-case basis. We agree with the Board; however, this would be an impractical and overly burdensome procedure which would result in the Board supplanting the duty of a public employer to insure that its employees are working within their job description. Under Section 604(5), 43 P.S. §1101.604(5) (Supp. 1974-1975), the Board may not include first level supervisory employees in a rank and file unit, and, in determining supervisory status of employees for this purpose, it "may take into consideration the extent to which supervisory and nonsupervisory functions are performed." Given this statutory directive and the record before us, we conclude that the Board did not act unreasonably when it denied the unit clarification petition.

Order affirmed.