Independent Association of Pennsylvania Liquor Control Board Employees, by Fred Stair, President, Petitioner *v.* Commonwealth of Pennsylvania, Pennsylvania Labor Relations Board, Respondent. Retail Clerks State Organizing Committee, Intervenor.

Argued September 12, 1979, before President Judge BOWMAN and Judges CRUMLISH, JR., MENCER, ROGERS, BLATT, DISALLE and CRAIG. Judges WILKINSON, JR. and MACPHAIL did not participate.

*John D. Killian,* with him *Killian & Gephart,* for petitioner.

*James F. Allmendinger,* with him *James L. Crawford,* and *Larry J. Rappoport,* for respondent.

*Lee Strickler,* with him *John D. Raup,* for intervenor, Bureau of Labor Relations.

OPINION BY JUDGE CRUMLISH, JR., January 7, 1980:

The Independent Association of Pennsylvania Liquor Control Board Employees (Association) appeals a decision of the Pennsylvania Labor Relations Board (Board) which resolved two Unit Clarification Petitions filed on behalf of the Pennsylvania Liquor Control Board (PLCB) and a Petition for Representation filed by the Association. The Board consolidated and heard extensive testimony on the three issues and filed separate orders in each. We affirm.

The Board determined that Liquor Store General Managers who are shift independent[1] and solely re-

---

[1] Shift independence indicates that the General Manager is not tied to a particular work shift. It indicates that the store does such a volume of business that separate individuals are responsible for each shift with the General Manager responsible for the entire operation.

sponsible for the day-to-day operation of the individual state stores are "management level" employees within the meaning of Section 301(16) of the Pennsylvania Employe Relations Act (Act), Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §1101.301(16).[2]. This resulted in the removal of these employees from the "meet and discuss"[3] supervisory unit[4] previously certified by the Board and represented by the Association.

The Board next determined that all employees designated "Liquor Store Clerk II" are rank and file employees. This likewise removed these employees from the "meet and discuss" supervisory unit represented by the Association and placed them in the unit represented by the Retail Clerks State Organizing Committee.[5]

---

[2] Section 301(16) provides:

'Management level employe' means any individual who is involved directly in the determination of policy or who responsibly directs the implementation thereof and shall include all employes above the first level of supervision.

[3] Section 301(17) of the Act, 43 P.S. §1101.301(17), provides in part:

'Meet and discuss' means the obligation of a public employer upon request to meet at reasonable times and discuss recommendations submitted by representatives of public employes. . . .

[4] Section 301(6) of the Act, 43 P.S. §1101.301(6), defines supervisor as follows:

'Supervisor' means any individual having authority in the interests of the employer to hire, transfer, suspend, layoff, recall, promote, discharge, assign, reward or discipline other employes or responsibly to direct them or adjust their grievances; or to a substantial degree effectively recommend such action, if in connection with the foregoing, the exercise of such authority is not merely routine or clerical in nature but calls for the use of independent judgment.

[5] The Retail Clerks are intervenors in this action.

Finally, the Board concluded that the Association's Petition for Representation failed to demonstrate the requisite 30% showing of interest in an appropriate unit as required by Section 603(c) of the Act, 43 P.S. §1101.603(c).[6]

The Association first argues that it was reversible error for the Board to fail to dismiss the unit clarification petitions where a "question of representation" exists.[7] In effect, the Association argues that unit clarification was an improper method of removing large numbers of employees from a previously certified unit where it would result in a loss of union representation. We disagree. Where a petition for representation was filed by the union representative which required a redetermination of unit appropriateness and where the unit clarification petitions required an identical determination, the Board did not err in acting on the consolidated petitions.[8]

---

[6] Section 603(c) provides:

If a public employer refuses to consent to an election, the party making the request may file a petition with the board alleging that thirty per cent or more of the public employes in an appropriate unit wish to be exclusively represented for collective bargaining purposes by a designated representative. The board shall send a copy of the petition to the public employer and provide for an appropriate hearing upon due notice. If it deems the allegations in the petition to be valid and the unit to be appropriate, it shall order an election. If it finds to the contrary, it may dismiss the petition or permit its amendment in accordance with procedures established by the board.

[7] The source of this contention is a Board regulation found in 34 Pa. Code §95.23(a), which provides:

If no question of representation exists, a petition for clarification of an existing bargaining unit or a petition for amendment of certification may be filed by the collective bargaining representative or by the public employer.

[8] We will reject the motion to quash this portion of the appeal filed by the Board and the Commonwealth of Pennsylvania, Bureau of Labor Relations.

The Association's next contention is that the Board erred by classifying shift independent General Managers as Management. The shift independent General Managers were created as a result of the PLCB's reorganization of the management structure in the State Stores. The purported purpose of the reorganization at this level was to clearly delineate a line of authority whereby a single individual would be responsible for day-to-day store operations whereas, under the "old system'', a co-manager concept was in effect. The Board determined that only shift independent General Managers were management level employees.

In the large volume stores, the General Manager is not tied to a shift and the shift supervisor is a Liquor Store Manager or in some cases a Liquor Store Clerk II. Section 301(16) requires that all employees above first-level supervisor shall be management. All Liquor Store Managers are first-level supervisors. Liquor Store Clerk IIs as a unit are rank and file, but in stores where they act as shift supervisors, they sufficiently resemble first-level supervisors so as to put the shift independent Liquor Store General Manager in all instances above the first level of supervisor and thus a management-level employee. We will not interfere with this area of Board expertise, *i.e.*, determination of appropriate bargaining unit, where the conclusions are not arbitrary or capricious but a reasonable conclusion from the facts. *St. Joseph's Hospital v. Pennsylvania Labor Relations Board,* 473 Pa. 101, 373 A.2d 1069 (1977).

The Association further argues that the Board erred when it determined that Liquor Store Clerk IIs are rank and file employees. The Board clearly considered the extent to which supervisory and non supervisory functions are performed by Liquor Store Clerk IIs and concluded that on balance their responsibilities are in conformity with rank and file employees. This

appropriate "balancing test" is provided for by Section 604(5) of the Act, 43 P.S. §1101.604(5). The result is not impinged on the fact that in some stores Clerk IIs serve as shift supervisors. To avoid the effect of overfragmentation of the employee unit and in recognition of a clear community of interest, all Clerk IIs are properly considered rank and file for purposes of the Act. Section 604 of the Act, 43 P.S. §1101.604.

Finally, the Association argues that the Board's determination that it had failed to demonstrate a sufficient showing of interest was arbitrary and capricious, citing three reasons, only one of which we need address.[9] The Association contends that the Board was required to give it additional time to obtain additional authorization cards after it had deemed a unit to be appropriate which was distinct from the one described in the Association's Petition for Representation.

The requirement of a 30% showing of interest in an appropriate unit is mandated by Section 603 of the Act, 43 P.S. §1101.603. The Act provides that if the Board determines the allegations of the petition to be valid and the unit appropriate, it shall order an election. Here, the unit petitioned for exceeded the unit which was found to be appropriate. Representation petitions seek appropriate units and must be supported by a sufficient showing of interest at the time of filing. The Board, in its discretion, may dismiss the petition if it considers the allegations of the petition invalid. Nothing in the record reveals that its determination was arbitrary.[10]

---

[9] The first two contentions are not matters of record and a remand is not warranted.

[10] The Motion to Quash for failure to timely raise exceptions is rejected.

Accordingly, we

### ORDER

AND Now, this 7th day of January, 1980, it is ordered that:

1. The Motions to Quash filed by the Pennsylvania Labor Relations Board and the Pennsylvania Liquor Control Board are denied.

2. The order of the Pennsylvania Labor Relations Board dated September 5, 1978, making absolute its nisi orders of June 1, 1978 and June 30, 1978, is affirmed except insofar as it dismisses exceptions to the June 30, 1978 nisi order as untimely filed.