646 A.2d 625

WEST HANOVER TOWNSHIP

v.

PENNSYLVANIA LABOR RELATIONS
BOARD and Chauffeurs, Teamsters
and Helpers, Local Union # 776

Pennsylvania Labor Relations Board, Appellant.

WEST HANOVER TOWNSHIP, Appellant,

v.

PENNSYLVANIA LABOR RELATIONS BOARD
and Chauffeurs, Teamsters and Helpers,
Local Union No. 776.

Commonwealth Court of Pennsylvania.

Argued April 15, 1994.

Decided July 27, 1994.

James L. Crawford and John B. Neurohr, for appellant/appellee, Pennsylvania Labor Relations Bd.

Thomas A. Beckley, for appellee/appellant West Hanover Tp.

Before CRAIG, President Judge, NEWMAN, Judge, and DELLA PORTA, Senior Judge.

CRAIG, President Judge.

This case, involving the Public Employe Relations Act (PERA),[1] presents a first impression question involving the conduct of union representation elections by the Pennsylvania Labor Relations Board (PLRB), as follows:

> Where the Public Employe Relations Act requires that representation elections "shall be conducted by secret ballot" and mandates that the PLRB "shall establish rules and regulations concerning the conduct of any election" to "guarantee the secrecy of the ballot," does the PLRB act contrary to the statute in conducting a representation election solely by balloting through the U.S. Mail, having promulgated regulations relating only to on-site elections at

[1]. Act of July 23, 1970, P.L. 563, 43 P.S. §§ 1101.101–1101.2301.

polling places with poll watchers, and not having adopted any regulations to govern mail ballot procedure?

Also involved is a bargaining unit determination issue.

## HISTORY OF CASE

On November 14, 1990, Teamsters Local No. 776[2] filed a petition with the PLRB for certification as to representation of the nonprofessional employees of West Hanover Township, Dauphin County, requesting a hearing and the issuance of an election order.

After the resolution of a pending charge of unfair labor practices by the Teamsters against the township, the PLRB ultimately held a hearing on December 16, 1991, pursuant to which a hearing examiner issued a March 2, 1992 order (1) excluding the township roadmaster from the bargaining unit as a supervisory employee, but (2) refusing to exclude the Township Secretary and white-collar nonprofessional employees from the unit consisting also of blue-collar nonprofessional employees.

On March 23, 1992, the Board Representative issued an Order and Notice of Election directing that a representation election be held by United States Mail between the dates of April 6, 1992 and April 21, 1992, to ascertain the collective bargaining representative for the unit.

After the mail ballot was held and the election results, consisting of six votes in favor of the Teamsters and two votes for no representative, led to the PLRB's issuance of a Nisi Order of Certification, the township filed exceptions to the nisi order challenging (1) the legality of the mail ballot procedure and (2) the inclusion of white-collar nonprofessional employees within the unit. The PLRB overruled the exceptions and entered a final order.

After the township filed an appeal with the Court of Common Pleas of Dauphin County, the trial judge affirmed the PLRB's use of the mail ballot but reversed the PLRB's unit

---

2. Chauffeurs, Teamsters and Helpers, Local Union No. 776.

determination with respect to the inclusion of the white-collar nonprofessional employees.

The PLRB appealed to this court from the trial court's reversal of the unit determination, and the township cross-appealed with respect to the use of a mail ballot instead of on-site voting.

## ANALYSIS

### 1. Legality of Mail Ballot Without Regulations

■ The question preserved by the township's cross-appeal is whether the mail ballot election procedure violated the Public Employe Relations Act.

The statutory provisions of PERA, that govern here, are those requiring representational elections to be conducted by secret ballot and pursuant to rules and regulations established by the board to guarantee the secrecy of the ballot. Section 605 of PERA provides in pertinent part, as follows:

Representational elections shall be conducted *by secret ballot* at such times and places selected by the board subject to the following:

. . . .

(2) The board *shall establish rules and regulations concerning the conduct of any election* including but not limited to regulations which would guarantee the secrecy of the ballot.

43 P.S. § 1101.605 (emphasis added).

The only regulations which the PLRB has adopted with respect to representational election procedure are as follows:

§ 95.51. *Ballots*

(a) Elections shall be by *secret ballot,* at times, places and in the manner directed by the Board, and shall be conducted by a designated agent of the Board, whose determination of questions arising shall be final, subject, however, to review by the Board.

(b) Ballots shall be prepared and issued by the Board. Ballots shall contain the name of each representative and a choice of 'no representative.' The place of priority on the

ballot shall be determined by the chronological filing or appearance on the docket of the Board but with the Petitioner taking first priority. In a runoff election, the place of priority shall be determined by the sequence appearing on the ballot at the prior inconclusive election.

§ 95.52. *Election Watchers.*

*Each party to the election shall be entitled to be represented by one watcher at each polling place* or by additional watchers as the parties may agree, subject to the limitations the Board or its authorized agent may prescribe. Watchers for parties shall be employes eligible to vote. However, in the event the employer is unable to find an individual on the list of eligible voters who is willing to serve as a watcher, he may choose a nonsupervisory or other appropriate person.

§ 95.53. *Polling area.*

*Prior to the commencement of the election the agent of the Board shall designate the polling area and no electioneering of any kind shall take place within this area.* A violation of this requirement by a party or its representative or agent may be ground for setting aside the election.

34 Pa.Code §§ 95.51–53 (emphasis added).

The last two sections of the above regulations, § 95.52, 95.53, clearly are confined to the governance of on-site elections. Those sections grant to each party entitlement to be represented by "one watcher at each polling place," and they provide that an agent of the board shall designate "the polling area and no electioneering of any kind shall take place within this area."

The first section, § 95.51, governing the ballots, provides in subsection (b) what the form of ballot shall be. Although subsection (a) reiterates the statute by declaring that elections shall be by "secret ballot," the PLRB has no regulations describing the mail ballot procedure which it actually followed in this case.

The PLRB brief here attempts to restate and therefore revise the issue presented by the township as appellant. The PLRB attempts to state the issue in terms of whether or not the board abused its discretion in conducting the election by

mail, but the matter under review here is, as the township has correctly posed it, whether the conduct of balloting by mail, *without any structuring regulations,* exceeds the mandate of the statute.

In the absence of any challenge to date, the PLRB has used mail ballot elections extensively. The board's instruction sheet states:

THE PUBLIC EMPLOYE RELATIONS ACT ENCOUR-AGES THE SECRECY OF BALLOTS CAST IN BOARD–CONDUCTED ELECTIONS. IN ORDER TO SAFE-GUARD THE SECRECY OF YOUR BALLOT, YOU SHOULD FOLLOW THE INSTRUCTIONS BELOW AND DEPOSIT YOUR BALLOT IN THE UNITED STATES MAIL IMMEDIATELY.

Materials sent to the voting employee bear that instruction. The employee is directed to fill out the ballot, to insert it in a ballot envelope and, in turn, to place that envelope within an outer envelope addressed to the PLRB. Of course, the dual envelope system is designed to insure that no employee's identity will be revealed in relation to any particular ballot when the ballots are opened and counted.

However, when the statute requires that elections be conducted by "secret ballot," that requirement clearly pertains, not only to the counting and canvassing of the ballots when received by the PLRB, but also to the *casting of the ballots.*

Certainly, secrecy of ballot should be maintained at the time of *counting* by disassociating the marked ballot, when visible, from the identity of the person who cast the ballot. The dual-envelope system clearly can accomplish that result.

However, at the point of *marking the ballot,* the identity of the voter is apparent, and procedures must guarantee that the voting choice is also kept secret at that juncture. Of course, the familiar voting booth is the device employed to achieve that result at an on-site election.

With the absence of board regulations to govern what happens at the time the employee makes out his or her mail

ballot, there is nothing to promote secrecy at that juncture. There are no board regulations to declare and require that the employee shall not be subjected to any situation which would result in revealing his or her vote to anyone else at the time the ballot is being marked and the vote thereby cast. Influence by one side or the other obviously could be applied to cause voters to be gathered in the presence of each other, or in the presence of an observer, at the time each employee actually votes.

In *Marks v. Stinson*, 19 F.3d 873 (3rd Cir.1994), the United States Court of Appeals for the Third Circuit provides an illustration of how a mail ballot can be abused. That court recited in detail the findings of fact made by a federal district court with respect to the abuse of the mail ballot process in connection with a public election for a state senate seat. According to the findings, campaign workers, in numerous instances, executed ballots for voters without the voter understanding the nature of the document. In other instances, campaign workers instructed voters what places to mark on the ballot. Many voters who cast absentee ballots testified that they were unaware that they had signed absentee ballot applications.

In the light of § 605(2) of PERA, providing that the board "shall establish rules and regulations ... which would guarantee the secrecy of the ballot," the total absence of any specification to require secrecy with respect to the *casting* of mail ballots is obvious on this record. Although the control of secrecy in a mail ballot election is obviously more difficult to achieve than that which can be exercised in the specific locale of an on-site election, the statute calls at least for regulations requiring that employees shall not be subjected to any situation which would expose their election choices to the knowledge of others when cast.

Although the Pennsylvania Election Code, Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. §§ 2601–4051, governs public elections and has no direct application to labor elections, its provisions for the regulation of mail balloting (absentee ballots) provide instructive parallels.

Election Code § 1304, 25 P.S. § 3146.4, prescribes for absentee ballots a two-envelope system similar to that which the board here employs.

Election Code § 1306, 25 P.S. § 3146.6, specifically provides that

the elector shall, in secret, proceed to mark the ballot only in black lead pencil, indelible pencil or blue, black or blue-black ink, in fountain pen or ballpoint pen, and then fold the ballot, and close and securely seal the same in the envelope on which is printed, stamped or endorsed 'Official Absentee Ballot.'

The statutory provisions then require that the ballot envelope shall be placed inside the outer one, bearing the declarations to be filled out by the voter for validation purposes.

The same section makes provision for voters who are unable to sign because of illness or physical disability.

Election Code § 1306(a), 25 P.S. § 3146.6(a), governs and limits the assistance which absentee voters may obtain if subject to a physical disability which renders the voter unable to see or mark the official ballot. The Code provides specifically for a statement of the voter requiring assistance and also a declaration of the person rendering assistance.

Election Code § 1308, 25 P.S. § 3146.8, then provides in detail how the mail ballots shall be gathered, safeguarded and counted. In the presence of watchers, election officials are to proceed to identify the validation of the vote. The inner envelopes, when separated from the outer validating envelopes,

shall be placed in one or more depositories at one time and said depository or depositories well shaken and the envelopes mixed before any envelope is taken therefrom.

This section also provides that

if any of these envelopes shall contain any extraneous marks or identifying symbols other than the words 'official absentee ballot,' the envelopes and the ballots contained therein shall be set aside and declared void.

These provisions of Pennsylvania's statutory law thus illustrate strongly the safeguards which need to be prescribed, not only with respect to the counting of mail ballots, but also with respect to the casting of the votes by the elector who is voting by means of the mails.

The PLRB in its brief contends that the mail balloting here, even without safeguarding regulations, should not be invalidated because the township has not presented any evidence that secrecy in ballot casting was violated or that voter independence was negated. However, PERA's statutory mandate for the promulgation of regulations is not subject to any condition precedent that improper practices shall have occurred; the requirement of regulations in advance is explicit and absolute. One of the purposes of regulations, duly adopted, clearly is to establish standards of proper conduct, and to inform participants about them beforehand—standards against which actual conduct can be measured. The mere statement in the instructions, that the law "ENCOURAGES THE SECRECY OF BALLOTS CAST IN BOARD–CONDUCTED ELECTIONS," is a generality, not a regulation, because it provides no direction as to actual conduct.

Of course, to guarantee absolute secrecy and freedom is obviously difficult with mail balloting, but the plain language of the statute imposes on the board a duty to promote secrecy, in ballot casting as well as in counting, by the adoption of informative regulations of a realistic nature which the board has not yet adopted.

Therefore, because of the absence of PLRB compliance with the statutory mandate for regulations promoting secrecy in mail balloting, the conclusion must be that the mail ballot election employed in this case is contrary to the statute and invalid.

2. Unit Determination Including Township Secretary
and Secretary/Receptionist with Road and
Maintenance Workers

The bargaining unit here, as certified, consists primarily of the township's blue-collar road and maintenance workers.

The PLRB upheld the hearing examiner's unit determination, which excluded the township roadmaster as a supervisory employee, but included the township secretary appointed pursuant to the Second Class Township Code, and the secretary/receptionist for the township, along with the five or six road and maintenance workers of the township.

The township's exceptions to that unit certification were dismissed by the board, but the trial court, on appeal, sustained those exceptions and struck both of the remaining two white-collar positions from the eligibility list.

The position of township secretary is established by § 540 of the Second Class Township Code of May 1, 1933, P.L. 103, *as amended,* 53 P.S. § 65540. The township secretary, as official clerk appointed by the board of supervisors, is the keeper of the records of all township proceedings. The secretary must preserve the township's minute book, account book and other financial records and must prepare the annual tax duplicate of the township. According to the hearing examiner's findings, the township secretary serves at will of the board of supervisors and does not receive overtime pay if she works more than her regular forty hours per week; she is the administrative assistant to the township manager. The hearing examiner in this case also found that the township secretary also processes the township's financial documents, maintains the personnel files for all township employees and prepares the payroll for processing; she also maintains the township's confidential files, such as those relating to litigation.

According to the findings, the secretary/receptionist, works thirty hours per week, answers telephones, greets persons at the township building, performs secretarial, filing, computer and clerical duties and edits the township's quarterly newsletter. She is the secretary to the township manager.

■ This court accords very substantial deference to the expertise of the PLRB in making decisions on bargaining unit determination. We have declined to interfere with the expertise of the PLRB in this respect where the board's conclusions

are not arbitrary or capricious but represent a reasonable conclusion from the facts. *Independent Association of Pennsylvania Liquor Control Board Employees v. Pennsylvania Labor Relations Board,* 48 Pa.Commonwealth Ct. 342, 409 A.2d 532 (1980). If the determinations of the PLRB meet those standards and are based upon findings supported by substantial evidence, the PLRB's unit description will be affirmed. *Millcreek School District v. Millcreek Education Association,* 64 Pa.Commonwealth Ct. 389, 440 A.2d 673 (1982).

Concerning the appropriateness of bargaining unit composition, § 604(1) of PERA provides:

Section 604. The board shall determine the appropriateness of a unit which shall be the public employer unit or a subdivision thereof. In determining the appropriateness of the unit, the board shall:

(1) Take into consideration but shall not be limited to the following:

(i) public employes must have an identifiable community of interest, and

(ii) the effect of over-fragmentization.

(2) Not decide that any unit is appropriate if such unit includes both professional and nonprofessional employes, unless a majority of such professional employes vote for inclusion in such unit.

43 P.S. § 1101.604(1), (2).

In applying this section, there is no problem with § 604(2), prohibiting a non-consensual combination of professional and nonprofessional employees in a unit, because no professional employees are involved in this case.

The other statutory factors, in § 604(1), call for pursuing (i) the goal of combining employees who have an identifiable community of interest, while at the same time (ii) avoiding over-fragmentation of units. However, as the trial judge astutely noted, whenever closer community of interest is achieved, the units will logically be smaller, so that the danger of over-fragmentization may be encountered. The PLRB

commendably has a policy of avoiding over-fragmenting of units, preferring "wall-to-wall" units where possible.

In PERA, the definitions of "supervisor" or "management level employes" are as follows:

(6) 'Supervisor' means any individual having authority in the interests of the employer to hire, transfer, suspend, layoff, recall, promote, discharge, assign, reward or discipline other employes or responsibly to direct them or adjust their grievances; or to a substantial degree effectively recommend such action, if in connection with the foregoing, the exercise of such authority is not merely routine or clerical in nature but calls for the use of independent judgment.

. . . .

(16) 'Management level employe' means any individual who is involved directly in the determination of policy or who responsibly directs the implementation thereof and shall include all employes above the first level of supervision.

43 P.S. § 1101.301(6), (16).

This court agrees with both the PLRB and the trial court that neither the township secretary nor the secretary/receptionist is a supervisor or a management level employee, and therefore including them within the same unit as the road maintenance employees would not result in an improper placing of supervisors within an employee bargaining unit.

As a factual basis for including the two office employees with the road maintenance workers, the PLRB placed considerable reliance upon the similarity in holidays, vacation, sick leave, pension plan and health plan, as between the two groups, even though differences in wages, hours and working conditions exist.

In disagreeing with the PLRB's determination, the trial court and the township rely upon our decision in *Amalgamated Transit Union Local # 89 v. Pennsylvania Labor Relations Board,* 92 Pa.Commonwealth Ct. 144, 498 A.2d 485 (1985). In that case, the PLRB certified a twenty-two member bargaining unit composed of drivers, mechanics and bus

washers employed by a transit authority, but excluded a dispatcher/secretary position held by a white-collar office employee, whose duties were primarily secretarial and clerical.

This court agreed with the PLRB, in reversing the trial court decision, that excluding the dispatcher/secretary did not constitute over-fragmentization. Exclusion of the dispatcher/secretary was approved by the PLRB and this court because that employee, functioning as a bookkeeper and secretary, in effect acted as a liaison between the drivers and management. Here the PLRB rejects *Amalgamated Transit Union* on the ground that it involved no identifiable community of interest between the lone white-collar employee and the blue-collar transit workers.

In this case, where the conclusions are reversed—the PLRB including the white-collar workers in the unit and the trial court excluding them—the PLRB prefers to rely on our decision in *Washington Township Municipal Authority v. Pennsylvania Labor Relations Board*, 131 Pa.Commonwealth Ct. 36, 569 A.2d 402 (1990), *appeal denied*, 525 Pa. 652, 581 A.2d 577 (1990). In that case, this court affirmed decisions of the trial court and PLRB, which agreed upon including white-collar workers—a bookkeeper/accountant, a billing clerk and an office worker—in the same unit with the blue-collar workers of the authority, such as water operators and laborers. This court agreed that the bookkeeper/accountant was not a confidential employee within the meaning of PERA § 301(13), 43 P.S. § 1101.301(13)—i.e., privy to collective bargaining information—because the authority had never engaged in collective bargaining. Inclusion of the office workers was deemed appropriate by this court and the PLRB on the ground that a bargaining unit consisting of all regular full- and part-time clerical and blue-collar personnel can be appropriate with an identifiable community of interest. In *Washington Township Municipal Authority*, as in this case, there was no previous history of collective bargaining.

Accordingly, under the authority of *Washington Township Authority*, there is nothing in this record to fault the PLRB's inclusion of the secretary/receptionist in the bargaining unit.

The record indicates that the duties of that office worker are not confidential and that any future collective bargaining negotiations can be conducted without her bargaining unit status hampering the functioning of the township manager and the township board of supervisors for whom she works.

However, the situation of the township secretary presents a new and different problem for this court because the position of township secretary, created by § 540 of the statute as stated above, is an appointed officer position of the township. Section 540 of the Second Class Township Code is within the Code portion entitled "ARTICLE V—TOWNSHIP OFFI- CERS." A second class township is an entity which has "corporate powers" that are exercised by its supervisors. Second Class Township Code § 702, 53 P.S. § 65702.

Thus, because the township secretary is an officer of the municipal body, the inclusion of such an appointed officer within the bargaining unit for the township workers would be just as inappropriate as the inclusion of the corporate secre- tary of a business corporation within a workers' bargaining unit.

Section 540 of the Second Class Township Code, as last amended, provides that:

The secretary ... shall receive such salary, wages or other compensation therefor as shall be fixed by the township supervisors. The amount paid to the secretary and treasur- er as salary, wages or other compensation for services shall be determined by the board of supervisors, except that where a supervisor is serving as secretary and/or treasurer, the auditor shall fix the compensation.

Moreover, in addition to the township secretary's status as an appointed officer of the municipal corporation, there is, as established by this record, the fact that the township secretary here functions as administrative assistant to the township manager. One need not await the occurrence of actual experi- ence in collective bargaining to conclude that placing a town- ship officer, who functions as its official secretary, in the

bargaining unit would present an impossible situation disadvantageous to all involved.

The bargaining ability of the township manager, together with or on behalf of the bargaining function of the township supervisors, would be very much constrained by the duty to bargain with a unit which included a township officer who indeed, as § 540 makes clear, could be an elected supervisor also.

The township secretary, as the official custodian of *all* files of the township, is obviously essential to performance of the bargaining function on behalf of the employer municipality. If the manager must exclude the township secretary, who is also his administrative assistant, from participation on his side of the bargaining table—as he would have to do if the township secretary is a member of the bargaining unit—the manager would be deprived of the assistance of the township officer most allied with him in the bargaining process.

Therefore, including the township secretary in the bargaining unit results in a definite conflict of interest, rather than a community of interest, with the employees who make up the larger component of the bargaining unit.

With respect to the trial court's review of the bargaining unit determination, this court must affirm the trial court's exclusion of the township secretary but reverse as to the trial court's exclusion of the secretary/receptionist.

## CONCLUSION

In reversing the trial court's approval of the mail balloting process without the regulations required by law, this court necessarily indicates that a proper bargaining unit election must be conducted either by an on-site election or by a mail ballot election pursuant to regulations to be adopted in accordance with PERA, to set reasonable standards for preserving secrecy of the ballot at the time of voting as well as at the time of counting votes.

The bargaining unit to be considered by such election shall include the secretary/receptionist employee with the road maintenance workers, but shall exclude the official township secretary as well as the roadmaster.

## ORDER

NOW, July 27, 1994, the order of the Court of Common Pleas of Dauphin County, dated July 30, 1993, is:

(1) Reversed as to the court's dismissal of township exceptions to the mail ballot procedure, so that the vote heretofore taken as to representation is hereby declared null and void because of the absence of regulations of the Pennsylvania Labor Relations Board (PLRB) providing for secrecy as to the casting and counting of mail ballots as required by law;

(2) Affirmed with respect to the exclusion of the office of Township Secretary from the bargaining unit; and

(3) Reversed as to the secretary/receptionist, so that such position is hereby included in the bargaining unit as determined by the PLRB.