**MONTGOMERY COUNTY, Appellant,**

v.

**PENNSYLVANIA LABOR
RELATIONS
BOARD.**

Commonwealth Court of Pennsylvania.

Argued Oct. 4, 2000.

Decided Feb. 15, 2001.

Howard R. Flaxman, Philadelphia, for appellant.

John B. Neurohr, Harrisburg, for appellee.

Alaine S. Williams, Philadelphia, for intervenor, AFSCME.

Before DOYLE, President Judge and COLINS, McGINLEY, SMITH, FRIEDMAN, KELLEY and LEADBETTER, JJ.

SMITH, Judge.

Montgomery County (County) appeals from an order of the Montgomery County Court of Common Pleas that affirmed an order of the Pennsylvania Labor Relations Board (Board) certifying the American Federation of State, County and Municipal Employees, District Council 88, AFL–CIO, (Union) as the exclusive bargaining representative of full and part-time non-professional employees of the County who are directly involved with and necessary to the functioning of the courts, but who are not hired, fired and directed by the courts (Court–Related Bargaining Unit). The County contends that the Board abused its discretion in its determination of which employees to include in the Court–Related Bargaining Unit; in its failure to dismiss the Union's petition for representation due to the Pennsylvania Supreme Court's mandate for a Unified State Judicial System; and in its failure to set aside the election due to various improprieties in the manner in which the election was conducted.

I

The Union filed a petition for certification with the Board in March 1998 seeking to represent the Court–Related Bargaining Unit in the County. The County and the Union agreed that the Court–Related Bargaining Unit should include employees in the Sheriff's Office, the Prothonotary's Office, the Register of Wills, the Clerk of Courts, the District Attorney's Office, the Public Defender's Office, the Office of the Coroner and the Jury Board. The County further contended that the Court–Related

Bargaining Unit should also include certain employees working for Information Services, the Youth Center, the Youth Center Shelter, the DUI Office, District Justice offices, the Domestic Relations Office, the Adult Probation Office, the Juvenile Probation Office, the Law Library and the Court Administration. The Board hearing examiner determined that employees in the offices of Domestic Relations, Adult Probation, Juvenile Probation, District Justices, Court Administration and the Law Library should be included in a court-appointed bargaining unit rather than the Court–Related Bargaining Unit. The hearing examiner found that employees in Information Services, the DUI Offices, the Youth Center and the Youth Center Shelter are not court-related.

An election was held pursuant to a Board order on October 16, 1998 in Courtroom F of the Montgomery County Courthouse, a site upon which the parties mutually agreed and which was designated by the Board election officer. The bulk of the eligible employees voted between 8:30 and 9:30 a.m., and at times during that period the line of voters extended out of the polling area into the hallway. The election officer instructed voters to take their ballot into the voting booth, mark the box of their choice, fold the ballot, bring it out and place it in the ballot box. Three voters disregarded these instructions and voted outside the booth; the County poll watcher was able to observe how one voter marked his ballot. The Union's poll watcher was greeted by voters at most with a mere "Hello," and he responded in the same fashion.

Sometime between 8:30 and 9:30 a.m., voter Eddie Culbreath was in line to vote, and while in line he chanted: "Go union, go union! More money, more money!" Hearing Examiner's order, March 24, 1999, at p. 2. One voter asked the election officer which box was for the Union, and she responded that the upper box was a vote for the Union and the lower box was a vote for no representation. While Marjorie Guziewicz waited to vote in the polling area, a deputy sheriff said to her, "Remember Ed." *Id.* This comment referred to Guziewicz's late husband who had been a deputy sheriff. Guziewicz believed that the deputy sheriff made the comment to encourage her to vote for the Union, but she was of the opinion that her husband had not been involved in union organizing.

Outside the designated polling area, Chester Hollinger, an employee who was instrumental in organizing for the Union, said, "Thanks for your support" to one or two people waiting in line. *Id.* Around 9:45 a.m., people outside the designated polling area yelled to people inside Courtroom F, informing them of a "get together" later in the day, and people inside the polling area responded as to whether they would attend. *Id.*, at p. 3. The results of the election favored the Union by a majority of six votes (114 for the Union to 108 for no representative), with 5 ballots challenged by the County. The Board entered a nisi order of certification on April 1, 1999 and a final order on June 21, 1999 dismissing the County's objections to the election. The County petitioned the trial court for review, and after hearing argument the court dismissed the County's petition on January 24, 2000.

II

The County first contends that the Board abused its discretion and ignored dispositive evidence of record in making its unit determination. The Board possesses administrative expertise in the area of public employee relations, and particularly in the determination of appropriate bargaining units. *School District of Philadelphia v. Pennsylvania Labor Rela-*

*tions Board,* 719 A.2d 835 (Pa.Cmwlth. 1998); *Independent Ass'n of Pennsylvania Liquor Control Board Employees v. Pennsylvania Labor Relations Board,* 48 Pa. Cmwlth. 342, 409 A.2d 532 (1980). In reviewing the Board's decision, this Court must rely upon the Board's expertise. *In re Employees of the Deputy Sheriffs Benevolent Ass'n of Bucks County, Inc.,* 153 Pa.Cmwlth. 75, 620 A.2d 622 (1993). Thus the Court's review of the Board's bargaining unit determination is limited to whether the findings of fact are supported by substantial evidence and whether the conclusions drawn from those facts are reasonable and not arbitrary, capricious or illegal. *Id.*

The Board has long followed a policy of certifying broad county employee bargaining units that include a unit of employees who are hired, fired and supervised by the courts (i.e., court-appointed), a unit of employees who are not court-appointed but who are directly involved with and necessary to the functioning of the courts (i.e., court-related) and a residual unit of employees who are neither court-appointed nor court-related. *See, e.g., In re Employees of Chester County,* 27 PPER ¶ 27003 (Final Order, 1995). The court-related bargaining unit typically includes employees of the Sheriff's Office, the Prothonotary's Office, the Register of Wills, the Clerk of Courts, the District Attorney's Office, the Public Defender's Office, the Office of the Coroner and the Jury Board, which are the departments included in the Court–Related Bargaining Unit that the hearing examiner certified in this case. *Id.*

█ The County contends that the hearing examiner erred in excluding employees in the offices of Domestic Relations, Adult Probation, Juvenile Probation, District Justices, Court Administration and the Law Library based upon his conclusion

that these employees should be included instead in a court-appointed bargaining unit. The County argues that the hearing examiner's determination was erroneous because the employees in those offices are appointed by a resolution of the County Commissioners rather than by a court order. The County maintains that whether an employee is included in a court-appointed bargaining unit should be determined solely by the ministerial act of whether the employee is appointed by County resolution or by court order. While the County's argument is appealing in its simplicity, it is ultimately unpersuasive.

The Board's policy to certify a separate unit of court-appointed employees arose in response to a series of Supreme Court decisions which held that judges are the public employers of the court employees whom they supervise, although county commissioners act as the judges' exclusive representatives in labor negotiations. *See County of Lehigh v. Pennsylvania Labor Relations Board,* 76 Pa.Cmwlth. 641, 464 A.2d 699 (1983) (discussing the policy of the Board regarding the court-appointed bargaining unit), *rev'd on other grounds,* 507 Pa. 270, 489 A.2d 1325 (1985). The court-appointed unit therefore is properly comprised of those employees over whom judges possess the actual authority of employers. Courts necessarily retain the authority to select, discharge and supervise these employees regardless of the ministerial acts giving rise to the employees' appointment within the particular county. *See id.*

The hearing examiner considered various sources, including the status of the department heads, the County's grievance procedure and the County's organizational charter, in reaching his conclusion that employees in the offices of Domestic Relations, Adult Probation, Juvenile Probation, District Justices, Court Administration

and the Law Library are court-appointed. Furthermore, the hearing examiner's decision is consistent with the Board's prior determinations. *See, e.g., In re Schuylkill County*, 18 PPER ¶ 18104 (Nisi Order of Unit Clarification, 1987). These sources provide ample support for the Board's decision, and thus the Board's decision may not be disturbed by the Court.

■ The County further contends that the hearing examiner erred in determining that employees in Information Services, the DUI Offices, the Youth Center and the Youth Center Shelter are not court-related. The County argues that the evidence showed that Information Services performs essential tasks for the court, without which the court could not function, and that employees in the Youth Center, the Youth Center Shelter and the DUI Offices are court-related because individuals are often sent to those offices by court order. The Board, however, found that none of these departments are necessary to the functioning of the court. While the County may be correct that each of these departments helps to facilitate the work of the court in some manner, such an argument could be made for nearly every County employee. The Board's finding is supported by evidence in the record, and thus it may not be disturbed by the Court. *Deputy Sheriffs Benevolent Ass'n of Bucks County*.

### III

■ Finally, the County argues that the Board abused its discretion by failing to set aside the election due to various improprieties in the manner in which the election was conducted. The County contends that the record establishes numerous imperfections in the conditions under which the election was held and that the election conduct should be closely scrutinized because the election result was so close. The County asserts that the evidence shows that Union representatives spoke to employees waiting to vote and that this conduct invokes a per se rule invalidating the election results in accordance with *Milchem, Inc.*, 170 N.L.R.B. 362 (1968). In that case the National Labor Relations Board set forth a strict rule against prolonged conversations between representatives from any party to the election and voters waiting to cast ballots in the polling area.

■ This Court discussed the standards for setting aside an election under the Public Employe Relations Act (PERA)[1] in *Kaolin Mushroom Farms, Inc. v. Pennsylvania Labor Relations Board*, 702 A.2d 1110 (Pa.Cmwlth.1997). Although the Board endeavors to achieve "laboratory conditions" in representation elections,[2] it is well settled that the theoretical concept of laboratory conditions must be realistically applied. Representation elections are not to be set aside lightly; the objecting party has a heavy burden to "show by specific evidence not only that improprieties occurred, but also that they interfered with the employees' exercise of free choice to such an extent that they *materially affected* the election results." *Id.* at 1116 (citations omitted). The Board has broad discretion to determine whether the circumstances of the election are sufficiently close to laboratory conditions such

1. Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§ 1101.101—1101.2301.

2. The Board has stated that the representation election should be a laboratory in which an experiment may be conducted, under conditions as nearly ideal as possible, to determine the uninhibited desires of the employees. *Pennsylvania Labor Relations Board v. Woodland Hills School District*, 13 PPER ¶ 13298 (1982).

that the voters were able to exercise free choice in their decision. *Id.*

■ The Board determined in this case that the improprieties did not warrant setting aside the election results, and the Court finds no abuse of discretion in that decision. While the record establishes various improprieties in the conduct of the election, the County failed to produce any evidence that these improprieties interfered with the employees' exercise of free choice. The employees who did not maintain the secrecy of their ballots chose not to do so. The electioneering comments made within the polling area were limited and were made by third parties (voting employees). Electioneering comments are gauged by a less exacting standard when made by "third parties, such as prounion employees, rather than by parties to the election itself." *Id.* at 1123.

■ Hollinger was instrumental in organizing for the Union; however, his comments were made outside the designated polling area. The County contends that the polling area should be extended to include the area immediately outside the area that was designated by the election officer with the agreement of the parties. However, the argument that the polling area should be so extended was specifically rejected by the Court in *Kaolin*. Furthermore, the record contains no evidence that Hollinger or any representative of the Union had an extended conversation with any employee waiting to vote. Accordingly, the *Milchem* rule is inapposite to this case, and there is no need for the Court to determine whether that rule has been adopted by the Board.[3] For the foregoing reasons, the order of the trial court is hereby affirmed.

### ORDER

AND NOW, this 15th day of February, 2001, the order of the Court of Common Pleas of Montgomery County is affirmed.

---

**3.** The County also argues that, because the current scheme for county funding for the courts is unconstitutional, the Board should defer action on new Court bargaining units until the transition to the Unified Judicial System required by the Pennsylvania Supreme Court is complete. *See County of Allegheny v. Commonwealth*, 517 Pa. 65, 534 A.2d 760 (1987). The County relies upon the July 26, 1996 Interim Report of the Master on the Transition to State Funding of the United Judicial System (Master's Report) filed by Justice Montemuro pursuant to the Supreme Court's order in *Pennsylvania State Association of County Commissioners v. Commonwealth*, 545 Pa. 324, 681 A.2d 699 (1996). On the subject of labor relations, the report concludes: "The Master recommends that appropriate actions be taken, as necessary, to ac-

commodate all reasonable efforts to organize eligible personnel of the unified judicial system in the manner, and to the extent provided by state and federal law." Master's Report, at p. 24.

Nothing in this language or any other portion of the report identified by the County suggests that court-related county employees should be prohibited from organizing during the transition. The hearing examiner concluded that denying court-related employees their statutorily guaranteed right to collectively organize until some as-yet-undetermined date would be inequitable and counter to the purposes of the PERA, and the Court agrees. The Court is not persuaded that the Master's Report or the Pennsylvania Constitution requires such a result.