**FRANKLIN COUNTY DEPUTY SHERIFF'S ASSOCIATION,**
Appellant

v.

**PENNSYLVANIA LABOR RELATIONS BOARD.**

Commonwealth Court of Pennsylvania.

Argued Sept. 13, 2005.
Decided Oct. 21, 2005.

---

Ian J. Blynn, Harrisburg, for appellant.

Jack E. Marino, Harrisburg, for appellee.

BEFORE: PELLEGRINI, Judge, and LEADBETTER, Judge, and JIULIANTE, Senior Judge.

OPINION BY Senior Judge JIULIANTE.

The Franklin County Deputy Sheriff's Association (Association) appeals from the December 28, 2004 order of the Court of Common Pleas of the 39th Judicial District, Franklin County Branch (trial court), that affirmed a final order of the Pennsylvania Labor Relations Board (Board) dismissing the Association's exceptions to the proposed order of the Board's hearing examiner dismissing the Association's petition for representation by a separate bargaining unit under the "guard" exclusion contained in Section 604(3) of the Public Employe Relations Act (PERA), Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. § 1101.604(3).[1]  We affirm.

On February 16, 1973, the Board certified the American Federation of State, County and Municipal Employees as the exclusive representative of County employees involved with and necessary to the functioning of the county courts, including

---

1. On February 15, 2005, Franklin County (County) filed a notice of intervention.

the Sheriff's Office. On December 20, 2002, the Association submitted a petition for representation to the Board under Section 604(3) of PERA seeking to represent a bargaining unit of all full-time and regularly scheduled part-time deputy sheriffs. The proposed bargaining unit would consist of 11 full-time deputies and four regularly scheduled part-time deputies. The County opposed the Association's petition for representation.

Section 604(3) of PERA provides:

The [B]oard shall determine the appropriateness of a unit which shall be the public employer unit or a subdivision thereof. In determining the appropriateness of the unit, the [B]oard shall:

. . . .

(3) Not permit guards at prisons and mental hospitals, employes directly involved with and necessary to the functioning of the courts of this Commonwealth, or any individual employed as a guard to enforce against employes and other persons, rules to protect property of the employer or to protect the safety of persons on the employer's premises to be included in any unit with other public employes, each may form separate homogenous employe organizations with the proviso that organizations of the latter designated employe group may not be affiliated with any other organization representing or including as members, persons outside of the organization's classification.

43 P.S. § 1101.604(3).

By letter dated January 29, 2003, the Secretary of the Board dismissed the petition for representation without a hearing. The Association filed exceptions to the Secretary's decision asserting that it would be able to present sufficient evidence at a hearing to establish an existing guard status for the deputy sheriffs. In response, the Board issued a remand order directing the Secretary of the Board to schedule a hearing on the Association's contention that the deputy sheriffs qualify as security guards for purposes of Section 604(3) of PERA.

On May 9, 2003, a hearing was held at which both parties presented evidence. On October 3, 2003, the hearing examiner issued a proposed order of dismissal (POD) dismissing the Association's petition for representation. In his decision, the hearing examiner noted that there was no evidence that a strike by County employees had ever occurred in the County.

The hearing examiner also rejected the Association's argument that the Sheriff's Office Manual (Manual)[2] demonstrated

2. Section 1 of Chapter 11 of the Manual, which addresses the Sheriff's "additional duties," provides in pertinent part:

    a. Strike Duty
The Sheriff is responsible for the safety and well being of persons and property on either side of the issue when a strike is in progress. Sheriff's Deputies may be assigned to maintain law and order if the situation requires such action. Upon any member being notified of a strike (legal or otherwise) at any location in [the County], the Sheriff or Chief Deputy Sheriff will be immediately informed. It will be the responsibility of the Sheriff to determine if Deputies are to be sent to that location.

    . . . .
    (2) Scene assessment—Public Property
If the strike involves an action against Federal, State, *County* or Local Government, the Sheriff or an assigned Deputy Sheriff shall attempt to obtain the name and phone number(s) of the strike leader(s), the correct name of the government unit and it's [sic] exact location. The phone number(s) and name of the person in charge of the building(s) or grounds shall be obtained. A description of the scene shall include as much detail as to entrances, exits, etc. as possible.
    b. Strike Duty assignments
Deputy Sheriffs will be assigned to strike duty on an as-needed basis. All factors

that the deputies would be used as guards for purposes of Section 604(3) of PERA during a strike by County employees. In particular, the hearing examiner determined that the Manual does not indicate that the County Commissioners intended to use the deputy sheriffs to protect County property during a strike by County employees. The hearing examiner noted that regardless of their job description, the deputies have never protected County property during a strike by County employees.

The Association filed exceptions and on December 16, 2003, the Board issued an order making the POD absolute and final. In its order, the Board noted:

> The Board and the courts have repeatedly held that *general court-related security functions do not warrant severing a unit of deputy sheriffs absent a showing on the record that those deputies have in fact enforced the employer's rules for the protection of property and the safety of persons as against other county employes during labor unrest where the public employer does not intend to use them in that capacity.* The courts agree that the Board may not speculate to the contrary when the County's position is that it will not utilize deputy sheriffs to protect persons or property in the event of labor unrest. Moreover, job titles or descriptions alone are inadequate to overcome the Board's requirement that it make unit

determinations based on actual job functions.

> Therefore, *a policy manual or written job description alone is insufficient as a matter of law* to establish that the County will in fact utilize deputy sheriffs, instead of an outside security agency, to enforce rules for the protection of County property and the safety of persons on its premises in the event of County employe labor unrest, especially since the County, which the guard unit provisions of Section 604(3) are meant to protect, is opposing the [Association's] petition to separate the deputy sheriffs from the broader court-related unit in this case.

Board's Final Order at 2–3; R.R. 145a–146a (citations omitted, emphasis added).

On December 28, 2004, the trial court issued a decision and order upholding the Board's dismissal of the Association's petition. The Association's appeal to this Court followed. "This Court's scope of review of the Board's bargaining unit determination is limited to determining whether findings of fact are supported by substantial evidence and whether conclusions drawn from those facts are reasonable and not arbitrary, capricious or illegal." *Washington County v. Pennsylvania Labor Relations Bd.*, 149 Pa. Cmwlth. 603, 613 A.2d 670, 672 (1992). "In reviewing the Board's decision, this Court must rely on the Board's expertise in the area of public labor relations to weigh and determine the facts." *Id.*

involved in the strike shall be taken into account. When assigned, the Deputies shall be in uniform and be equipped with riot helmet, night stick, portable radio and gas mask. The riot equipment will normally be secured in the sheriffs['] vehicle(s) and will be used only on the direction of the Sheriff or the senior Deputy at the scene.
c. End of Sheriff's Role in Strike
If the Sheriff, or in his absence the Chief Deputy Sheriff, determines that the number

of Deputies available is not sufficient to handle the strike, a request for assistance shall be made to the police department. If the Sheriff makes the determination that the strike can no longer be controlled by his office, a letter shall be transmitted to the Governor of the State of Pennsylvania which will transfer the responsibility to the State for the duration of the Strike.
N.T., Exhibit A–1; R.R. 120a (emphasis added).

## I.

The Association contends that the County, through the Sheriff, has decreed that it will rely on the deputies to protect people and property in the event of any strike, whether public or private. The Association asserts that inasmuch as the Sheriff's Office has decreed in the Manual that the deputies will guard the County's premises in the event of a strike by County employees, a division of loyalty may arise if the deputies are not permitted to form a separate bargaining unit under Section 604(3).

In support of its position, the Association cites this Court's decisions in *Washington County* and *Erie County Area Vo-Tech Sch. v. Pennsylvania Labor Relations Bd.*, 52 Pa.Cmwlth. 388, 417 A.2d 796 (1980). In *Erie County Area Vo-Tech Sch.*, we stated that

> characterization of the employees as "guards" under [Section 604(3) of PERA] is not solely dependent on whether their main function is the enforcement of the employer's rules against other employees. The critical element of the "guard" function is that the employees are responsible for enforcing the employer's rules to protect the employer's property. During a strike or labor dispute this could mean possibly protecting the employer's property from striking employees; there the divided loyalty problems which necessitate the guards' exclusion from the bargaining unit could become apparent.

*Id.* at 798. Likewise, in *Washington County* we recognized that

> [t]he purpose of the requirement that guards be separated from other employees in collective bargaining is to ensure that during strikes or labor unrest, "the employer would have 'guards' who could enforce rules for the protection of property and safety of persons without being confronted with a division of loyalty between the employer and dissatisfied fellow union members."

613 A.2d at 673 (quoting *Township of Falls, Bucks County v. Com., Labor Relations Bd.*, 14 Pa.Cmwlth. 494, 322 A.2d 412, 414 (1974)).

Although it is undisputed in the case at bar that there never has been a strike by County employees, the Association cites *In re Employees of the Deputy Sheriffs Benevolent Ass'n of Bucks County, Inc.*, 153 Pa.Cmwlth. 75, 620 A.2d 622 (1993), for the proposition that the deputies should be in a separate bargaining unit due to the *possibility* of a division of loyalty in the event of labor unrest. The Association contends that the record in the present case establishes with certainty that the deputies will be on the front lines protecting County property in the event of a strike by County employees.

In response, the Board maintains that the purpose of Section 604(3) of PERA is to protect *employers* by prohibiting employees utilized by the employer as guards within the meaning of Section 604(3), *i.e.*, protecting County property and personnel during labor unrest, from being represented by a union that represents non-guard employees. The Board asserts that where, as here, the County opposes the Association's petition for representation, Section 604(3) was not intended as an opportunity for unions to proliferate bargaining units out of self-interest.

In support, the Board cites *Montgomery County v. Pennsylvania Labor Relations Bd.*, 769 A.2d 554 (Pa.Cmwlth.2001), where this Court noted that the Board has consistently certified broad county employee bargaining units that typically include, *inter alia*, court-related units of employees such as those of the Sheriff's Office, the Prothonotary's Office, the Register of Wills, the Clerk of Courts, the District

Attorney's Office, the Public Defender's Office, the Office of the Coroner and the Jury Board. In the same vein, the Board also cites *Western Psychiatric Inst. & Clinic of the Univ. of Pittsburgh of the Commonwealth Sys. of Higher Educ. v. Com., Labor Relations Bd.*, 16 Pa.Cmwlth. 204, 330 A.2d 257, 261 (1974), where this Court recognized that it is incumbent upon the Board to consider the effects of over-fragmentation when certifying bargaining units and, therefore, that "the Board shall not casually approve one unit after another ... merely because the petitioning labor organization is able to gain the allegiance of some employees having an identifiable community of interest."

Turning to the merits of the Association's petition, the Board asserts that it has only certified deputy sheriffs as guards under Section 604(3) in limited circumstances where the record has shown that the county commissioners have used deputies as guards for purposes of Section 604(3) of PERA. In *Washington County*, the Board certified the deputies as guards after finding that the deputies had provided security at Washington County's health center and jail during a strike against that county by its unionized employees.

In that case, Washington County contended on appeal that the assignment of deputies to the picket line during the two-week strike did not justify the finding that the deputies are guards under Section 604(3). In *Washington County*, this Court noted that the Board conceded that "absent the evidence of assignment of the deputy sheriffs to the picket line during the strike, the Board would not have characterized the deputy sheriffs as guards." 613 A.2d at 673.

On appeal, both the court of common pleas and this Court affirmed the Board's certification. In particular, this Court noted that during the strike against the Coun-

ty, "the deputy sheriffs who were also [union] members were assigned to the picket line on a twenty-four hour basis to protect County property and to secure free access to County facilities for other employees and the public." *Id.* "A deputy sheriff testified that on one occasion, he physically removed the picketers to permit vehicles to enter the County's health center." *Id.*

In the present case, the Board maintains that *Washington County* is readily distinguishable on the ground that it is undisputed that the deputies in the case *sub judice* have never performed in the capacity of guards for the County within the meaning of Section 604(3). Rather, the Board asserts that the facts in the present case are more similar to those in *Bucks County*, where this Court determined that the activities cited by the union represented "no more than court-related security functions incidental to primary responsibilities of the deputy sheriffs" and thus that they did not "rise to the level to establish guard status under *Washington County*." 620 A.2d at 624. As a result, we reasoned that because the deputies' activities in *Bucks County* "did not exceed their court-related security functions," there was "a lack of evidence implicating either the possibility of a division of loyalty in the event of labor unrest as in *Erie County Vo–Tech* or actual occurrence of conflicts of loyalty as in *Washington County*." *Id.*

In *Bucks County*, the union argued that the deputies should be classified as guards under Section 604(3) because they would be required to enforce injunctions in the event of a strike by court-related employees. This Court, however, rejected this argument noting that "[s]erving an injunction order upon striking employees is a function delegated to the deputy sheriffs pursuant to their court-related statutory duties." *Id.* at 625. "That function does

not involve enforcing the employer's rules to protect County property and safety of persons as in *Washington County* where the deputy sheriffs were assigned to the picket line at the request of the county commissioners." *Id.*

In the case at bar, although the Manual provides that in cases of either a public or private strike the Sheriff is responsible for the safety of persons and property on either side of the strike, this Court does not believe that such duties are the type of guard duties contemplated by Section 604(3) of PERA. Rather, the strike duties detailed in the Manual are more in the nature of general law enforcement duties performed by neutral peace officers than those of security guards protecting their employer's property against fellow County employees at the request of the county commissioners as was the case in *Washington County.*

Furthermore, although the record in this case also indicates that the County's deputy sheriffs do perform some primary law enforcement duties outside of the courthouse setting, we do not believe that such duties entitle the deputies to guard status for purposes of Section 604(3). Again, these duties are more in the nature of those of a neutral peace officer and in short, do not amount to "guard duties" under Section 604(3). In other words, these duties do not include protecting County property at the request of their employer from fellow County employees during a strike by those employees. Consequently, we must conclude that there is insufficient evidence in the case *sub judice* to establish with the requisite certainty that there will be a division of loyalty in the event of a strike by County employees. *Bucks County.*

Having determined (1) that the deputy sheriffs in the present case have never performed guard duty for the County during a strike by County employees and (2) that the strike duties listed in the Manual are not the type of strike duties that would qualify the deputies as guards for purposes of Section 604(3) of PERA, we conclude that the Board did not err in denying the Association's petition for representation. *Id.*

## II.

Even assuming *arguendo* that the strike duties contained in the Manual would be sufficient to qualify the deputy sheriffs as guards for purposes of Section 604(3) of PERA, which would essentially mandate a separate bargaining unit for the deputies, we also agree with the Board that the Manual by itself is insufficient to establish that the County will in fact utilize the deputy sheriffs to protect County property and the safety of persons on its premises in the event of a strike by County employees. Nonetheless, the Association contends that the Sheriff, as a County officer, possesses the authority to establish official County policy and therefore that the Manual is sufficient to establish that the deputies' potential strike duties entitle them to guard status for purposes of Section 604(3) of PERA. In support, the Association cites Article 9, § 4 of the Pennsylvania Constitution, which provides in pertinent part that "[c]ounty officers shall consist of commissioners, controllers or auditors, district attorneys, public defenders, treasurers, sheriffs, registers of wills, recorders of deeds, prothonotaries, clerks of the courts, and such others as may from time to time be provided by law." PA. CONST. art. 9 § 4.

The Association also cites *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) and *Hennessy v. Santiago*, 708 A.2d 1269 (Pa.Super.1998), for the proposition that the Sheriff's policy to use his deputies as law enforcement officers

during a possible strike by County employees constitutes official County policy for purposes of establishing the deputies' guard status under Section 604(3) of PERA. Essentially, the Association contends that if an act or edict of the Sheriff may subject the County to liability under 42 U.S.C. § 1983, such acts or edicts constitute official County policy for purposes of allowing the County's deputy sheriffs to organize in a separate bargaining unit under Section 604(3) of PERA.

In *Monell*, the United States Supreme Court determined that local governments may be held liable for civil rights violations under 42 U.S.C. § 1983 based on action taken pursuant to acts or edicts of those who may fairly be said to represent public policy. In *Hennessy*, the Superior Court reasoned, *inter alia*, that to establish a claim against a municipality for a civil rights violation under Section 1983, the claimant must establish that the injury, *i.e.*, a deprivation of rights, privileges or immunities secured by the United States Constitution or federal law, was inflicted as a result of the implementation of a government policy or custom that was either made by the lawmakers or by an official whose acts or edicts may fairly be construed to represent official government policy.

■ As the trial court noted, however, the present case does not involve an alleged civil rights violation under Section 1983 due to the implementation of the Sheriff's policy. Further, in accord with *Monell* and *Hennessy*, the Sheriff's policy would only be attributable to the County if the implementation of said policy resulted in a Section 1983 violation. Clearly, such is not the case here where the Sheriff's policy at issue, *i.e.*, the deputy sheriffs' duties during a strike by County employees, never has been implemented. Therefore, we do not find *Monell* or *Hennessy* to

be relevant to the present case. Thus, we do not believe that either *Monell* or *Hennessy* supports the Association's position that the Sheriff's policies contained in the Manual must be considered to be official County policy for purposes of collective bargaining between the parties.

■ Rather, as we recognized in *Troutman v. Pennsylvania Labor Relations Bd.*, 735 A.2d 192, 195 (Pa.Cmwlth.1999), "[i]t is well-settled that the county commissioners are the exclusive managerial representatives for purposes of collective bargaining under [Section 1620 of the County Code, Act of August 9, 1955, P.L. 323, *as amended*, 16 P.S. § 1620]." In addition, in *Montgomery County* we noted that although judges are considered to be the public employers of the employees they supervise, "the county commissioners act as the judges' *exclusive representatives in labor negotiations*." 769 A.2d at 557 (emphasis added). Therefore, we agree with the Board that absent approval by the County Commissioners, the Sheriff's Office in the present case is not authorized to establish a separate bargaining unit for the deputy sheriffs based solely on the Sheriff's own policy regarding possible duties of the deputies in the event of a strike by County employees. *Id.*

At the June 9, 2003 hearing, John Hart, the County's Administrator, testified that the Manual has never been approved by the County Commissioners. N.T. 32; R.R. 50a. Hart further testified that there has never been a strike by County employees and that there has never been a situation where the County has done any planning for a strike. *Id.*

In addition, Hart testified that he is involved in all the "administrative-type" decisions made by the County Commissioners and that he advises them about government matters including labor relations. *Id.* at 34; R.R. 52a. Hart stated

that in his view, the County Commissioners would make the decision as to how security would be handled in the event of a strike by County employees. *Id.* at 35; R.R. 53a. Based on Hart's testimony, the hearing examiner reasoned that "the record does not permit a conclusion that the County intends to use the deputy sheriffs to protect its property in the event of a strike by County employes." POD at 4; R.R. 134a.

In view of the above discussion, we conclude that the Board did not err in determining that the Manual does not provide a sufficient basis for a finding that the deputy sheriffs in the present case qualify as guards under Section 604(3) of PERA. Insomuch as there is no clear indication that the County will use the deputies to guard County property during a strike County by employees, there is insufficient evidence for purposes of Section 604(3) to adequately establish the possibility of a division of loyalty in the event of a strike by County employees. *Bucks County.*

In view of the foregoing, the order of the trial court is affirmed.

### *ORDER*

AND NOW, this 21st day of October, 2005, the December 28, 2004 order of the Court of Common Pleas of the 39th Judicial District, Franklin County Branch, is hereby AFFIRMED.