In the Matter of the Employees of Carlynton School District. Carlynton School District, Appellant.

Argued May 4, 1977, before President Judge Bow-
MAN and Judges CRUMLISH, JR., KRAMER, WILKINSON,
JR., MENCER, ROGERS and BLATT. Judge KRAMER did not
participate in the decision.

*Thomas H. M. Hough,* with him *Lucchino, Gaitens
& Hough,* for appellant.

*Daniel R. Delaney,* Special Counsel, for intervening
appellant.

*Raymond W. Cromer,* with him *James L. Crawford*
and *Forest N. Myers,* for appellee.

OPINION BY PRESIDENT JUDGE BOWMAN, September
16, 1977:

The issue in this appeal is the status under the Pub-
lic Employe Relations Act, Act of July 23, 1970, P.L.

563, *as amended,* 43 P.S. §1101.101 et seq. (Act 195), of six professional employes of the Carlynton School District. The Pennsylvania Labor Relations Board (PLRB) concluded that the employes in question, a high school principal, a middle school principal, two elementary school principals, a high school assistant principal, and a reading supervisor, are "first level supervisors" within the meaning of Section 301(19) of the Act, 43 P.S. §1101.301(19). Consequently, the PLRB certified the Carlynton First Level Supervisor's Association, PSEA/NEA, as the exclusive representative of a unit comprising these six employes. The Court of Common Pleas of Allegheny County sustained the PLRB's order of certification. We reverse that order with respect to the status of the four principals and the assistant principal, and hold that these five individuals are "management level employes" within the meaning of Section 301(16) of the Act, 43 P.S. §1101.301(16). We affirm that order, however, with respect to the status of the reading supervisor.

In reviewing adjudications of the Pennsylvania Labor Relations Board, this Court must determine whether or not the findings of the PLRB are supported by substantial and legally credible evidence and whether or not the conclusions deduced therefrom are reasonable and not capricious, arbitrary, or illegal. *Pennsylvania Labor Relations Board v. Altoona Area School District,* 23 Pa. Commonwealth Ct. 445, 352 A.2d 560 (1976); *Albert Einstein Medical Center v. Pennsylvania Labor Relations Board,* 17 Pa. Commonwealth Ct. 91, 330 A.2d 264 (1975). We have determined that the PLRB's conclusion according first level supervisory status to the four principals and the assistant principal in question is both unreasonable and incorrect as a matter of law.

The Public Employe Relations Act contains the following definitions, which are pertinent here. Section

301(6) of the Act, 43 P.S. §1101.301(6), defines the term "supervisor" to mean

> any individual having authority in the interests of the employer to hire, transfer, suspend, lay-off, recall, promote, discharge, assign, reward or discipline other employes or responsibly to direct them or adjust their grievances; or to a substantial degree effectively recommend such action, if in connection with the foregoing, the exercise of such authority is not merely routine or clerical in nature but calls for the use of independent judgment.

Section 301(19) of Act 195, 43 P.S. §1101.301(19), defines "first level of supervision" and "first level supervisor" to mean "the lowest level at which an employe functions as a supervisor." "Management level employe," as defined by Section 301(16) of the Act, 43 P.S. §1101.301(16), means "any individual who is involved directly in the determination of policy or who *responsibly directs the implementation thereof* and shall include all employes above the first level of supervision." (Emphasis added.)

The importance of these various classifications is that a public employer must "meet and discuss" with "first level supervisors"[1] but not with "management level employes" since this latter category is specifically excluded from the definition of "public employes" set forth in Section 301(2) of the Act, 43 P.S. §1101.301(2). *See AFSCME v. Pennsylvania Labor Relations Board,* 17 Pa. Commonwealth Ct. 83, 330 A.2d 300 (1975).

The PLRB hearing examiner heard the testimony of the six employes in question and of the school district superintendent regarding the responsibilities and duties of each position. Job descriptions and various

---

[1] 43 P.S. §1101.704.

administrative memoranda were also received in evidence. Upon reviewing this evidence, the PLRB found that *both* management level and supervisory functions were performed by the principals and the assistant principal. Among other responsibilities, the Board found that grievances under the collective bargaining agreement between the employer (Carlynton School District) and the representative of the teachers are acted upon by the building principals and assistant high school principal at levels 1 and 2; that, in the past, the building principals and the assistant principal had ''sat with the employer's team at some collective bargaining sessions with representatives of the teachers;'' that the building principals and assistant principal are involved in hiring, room and course assignments, preparation of master schedules, and teacher evaluation; and that each building principal maintains, revises and updates a multi-page document referred to as the ''Building Policy.''

After making these findings of fact, the PLRB reasoned as follows:

> Although the Principals and Assistant Principals [sic][2] *at times determine policy,* and do *at times responsibly direct the implementation of policy,* in weighing the various activities of the Principals, it appears that the policy determination or any policy implementation of the Principals or Assistant Principals are subject to rejection, change, approval, or acceptance by the Central Administration or the School District, and consequently, that the Principals and the Assistant Principals are first level supervisors within the meaning of the Act. (Emphasis added) (footnote added).

---

[2] Only one assistant principal, the assistant high school principal, is involved in this case.

This conclusion of law was unreasonable and erroneous. The definition provided in Section 301(16) of the Act does *not* require that, in order to be classified as a "management level employe," an individual be involved directly in the determination of policy or responsibly direct the implementation of policy *at all times* or *in every aspect* of his job. In *AFSCME v. Pennsylvania Labor Relations Board, supra,* we concluded that employes are properly classifiable as "management level" employes where some, but not all, of their employment functions placed them within the statutory definition of management level employes.

Thus, when the PLRB found that the principals and the assistant principal of the appellant school district *"at times* determine policy" and *"at times* responsibly direct the implementation of policy," (emphasis added), the reasonable conclusion to be drawn was that these employes fell within Act 195's definition of management level employes. That these principals do not exclusively devote their time and energy to implementation of school board policy in no way diminishes their continuing responsibility to do so. Nor does the fact that policy determinations they may make or their actions in implementing school board policy is "subject to rejection, change, approval, or acceptance" by the school district superintendent or the school board sufficient to remove these individuals from management level status. Those who responsibly direct the implementation of policy do not lose management level status simply because their actions are subject to review by other individuals superior to them in management.

Brief attention should be devoted to the "weighing" process utilized by the PLRB in reaching its employment status determination in this case. The Board relied upon certain language contained in Section 604

(5) of Act 195, 43 P.S. §1101.604(5), as its justification for "weighing the various activities" performed by the individuals in question.[3] Specifically, the PLRB stated: "In determining whether these employes are supervisors or management level employes, the Board may take into consideration the extent to which supervisory and non-supervisory functions are performed. Section 604(5)."

In construing the language of Section 604(5) to provide for a "weighing" test applicable in determining management level status versus supervisory status, the PLRB erred. Section 604(5) clearly pertains to the inappropriateness of including first level supervisors in bargaining units with nonsupervisory, *i.e.*, rank and file, personnel. As we stated in *Pennsylvania Labor Relations Board v. AFSCME*, 20 Pa. Commonwealth Ct. 572, 576, 342 A.2d 155, 158 (1975): "Under Section 604(5), 43 P.S. §1101.604(5) . . . the Board may not include first level supervisory employees in a rank and file unit, and, in determining supervisory status of employees *for this purpose*, it 'may take into consideration the extent to which supervisory and nonsupervisory functions are performed.'" (Emphasis added.)

We turn now to the PLRB's conclusion that the reading supervisor of the appellant school district is a

[3] Section 604(5), 43 P.S. §1101.604(5), provides:

The board shall determine the appropriateness of a unit which shall be the public employer unit or subdivision thereof. In determining the appropriateness of the unit, the board shall:

. . . .

(5) Not permit employes at the first level of supervision to be included with any other units of public employes but shall permit them to form their own separate homogenous units. In determining supervisory status the board may take into consideration the extent to which supervisory and nonsupervisory functions are performed.

first level supervisor. Since the PLRB found that "[t]here is no evidence that the Reading Supervisor is involved directly in the determination of policy nor is there any evidence that she responsibly directs the implementation of policy," we affirm the Board's conclusion of her first level supervisory status.

Judge KRAMER did not participate in the decision in this case.

### ORDER

Now, September 16, 1977, the order of lower Court is affirmed as to the first level supervisor status of the reading supervisor of appellant school district. Its order is reversed as to the status of the principals of appellant school district and this case is remanded to the Pennsylvania Labor Relations Board for further action consistent with this opinion.