## STATE SYSTEM OF HIGHER EDUCATION, Petitioner,

v.

## PENNSYLVANIA LABOR RELATIONS BOARD, Respondent.

Commonwealth Court of Pennsylvania.

Argued June 17, 1999.

Decided Aug. 13, 1999.

Joseph F. Quinn, Pittsburgh, for petitioner.

John B. Neurohr, Harrisburg, for respondent.

Before PELLEGRINI, J., FLAHERTY, J., and NARICK, Senior Judge.

NARICK, Senior Judge.

The State System of Higher Education (Employer) appeals from an order of the Pennsylvania Labor Relations Board (Board), which determined that head coaches employed by university athletic departments are not supervisors within the meaning of § 301(6) of the Pennsylvania Employe Relations Act.[1] The Board concluded that these head coaches, as a class, only exercise supervisory authority sporadically, and therefore, may be included in the rank and file bargaining unit with the assistant coaches. Employer presents a single question for our review: whether the Board erroneously resolved the supervisory status of these head coaches by examining the frequency with which they performed various supervisory duties. Because the Act and applicable case law require an inquiry into the extent to which potential bargaining unit members perform supervisory duties, we affirm.

The Pennsylvania Employe Relations Act (Act), 43 P.S. § 1101.101–1101.2301, differentiates a number of classes of employees based upon the duties and responsibilities of each job class and imposes varying collective bargaining obligations on public employers regarding these employee classes. *AFSCME v. Pennsylvania Labor Relations Board,* 17 Pa.Cmwlth. 83, 330 A.2d 300 (1975). Included among the classes of employ-ees delineated by the Act are managerial, supervisory, and the remaining employees, commonly referred to as rank and file employees. *Id.* Pursuant to the Act, public employers shall: be exempt from any obligation to meet and discuss[2] or bargain collectively with management level employees; meet and discuss subjects raised by first level supervisory representatives; and bargain collectively with rank and file employee representatives.[3] The instant case involves a dispute over whether head athletic coaches should be classified separately as first level supervisors or included in the rank and file bargaining unit with all assistant coaches.

The relevant facts of this case are summarized as follows. The Association of Pennsylvania State College and University Faculties (Union) filed a petition for representation with the Board seeking to form a bargaining unit representing athletic coaches employed by various colleges and universities throughout Pennsylvania. On November 17, 1997, the Board's hearing examiner conducted a hearing at which Employer sought to exclude head coaches from the rank and file bargaining unit on the basis that they are first line supervisors pursuant to § 301(6) of the Act.[4] 43 P.S. § 1101.301(6). The parties presented evidence regarding the job responsibilities and authority granted to head athletic coaches employed by ten different state universities from which the Union sought to organize a bargaining unit.

1. Section 301.6 of the Public Employe Relations Act, Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. § 1101.301(6).

2. Section 704 of the Act imposes an obligation on public employers to meet and discuss issues of employment with first level supervisors but not with management level employees. 43 P.S. § 1101.704. Regarding first level supervisors, the Act defines "meet and discuss" as an obligation of public employers to discuss issues and recommendations concerning employment conditions submitted by employee representatives, although final issue resolution authority remains with the public employer. 43 P.S. § 1101.301(17).

3. 43 P.S. §§ 1101.301(2), 1101.704, and 1101.401.

4. The hearing examiner determined that a prior related case between these same parties concerning the supervisory status of athletic directors in the state university system was sufficiently related to the instant matter that the testimony and exhibits from that case would be incorporated into the record of this case. The parties presented additional testimony to supplement the record. (Employer's Brief at 4–5).

On January 9, 1998, the hearing examiner issued a decision and order finding that as a class, head coaches lacked essential supervisory capabilities required under § 301(6) of the Act, and therefore, qualify as members of the rank and file bargaining unit with all other coaches. The hearing examiner reasoned that §§ 301(6) and 604(5) of the Act must be read in tandem when assessing whether to exclude a job classification from a bargaining unit on the basis that the position is supervisory in nature. 43 P.S. §§ 1101.301(6) and 1101.604(5). Section 301(6) of the Act defines the position of supervisor as follows:

> "Supervisor" means any individual having authority in the interests of the employer to hire, transfer, suspend, layoff, recall, promote, discharge, assign, reward or discipline other employes or responsibly to direct them or adjust their grievances; or to a substantial degree effectively recommend such action, if in connection with the foregoing, the exercise of such authority is not merely routine or clerical in nature but calls for the use of independent judgment.

43 P.S. § 1101.301(6).

Section 604(5) of the Act addresses the appropriateness of including first level supervisors in a public employer bargaining unit and provides that the Board shall:

> (5) Not permit employes at the first level of supervision to be included with any other units of public employes but shall permit them to form their own separate homogenous units. In determining supervisory status the board may take into consideration the extent to which super-

visory and nonsupervisory functions are performed.

43 P.S. § 1101.604(5).

In applying these governing provisions of the Act, the hearing examiner made extensive findings of fact and rendered the following key determinations: *as a class*, (1) these head coaches do not independently hire their assistant coaches but rather participate in a hiring committee process; (2) these head coaches' promotion and retention recommendations regarding assistant coaches are not consistently followed by their respective institutions; (3) in those cases where these head coaches perform evaluations of their assistant coaches, those evaluations do not consistently affect the pay of the assistant coaches; (4) the direction and guidance which these head coaches provide their assistants does not always carry with it the authority to reward or sanction the assistant coaches. (Hearing Examiner's Decision, January 9, 1998, at 6–7). Employer timely filed exceptions with the Board. By order dated October 20, 1998, the Board adopted the hearing examiner's determination after correcting an error in finding of fact number ten.[5] Employer now appeals the Board's order to this Court.[6]

Employer presents the undisputed assertion that § 301(6) of the Act envisions that employees who exercise authority over co-workers are not suitable for inclusion in the same bargaining unit with those co-workers.[7] Employer further asserts that neither § 301(6) nor § 604(5) of the Act provide for review of time or frequency of task performance when assessing the supervisory status of a given job

---

5. In finding of fact number ten the hearing examiner incorrectly reported that Edinboro University did not follow a head coach's recommendation not to renew the contract of an assistant coach. The Board revised finding of fact ten to reflect that, in fact, the University did not follow the head coach's recommendation *to retain* the assistant coach. However, as the Board aptly noted, this amendment did not alter the fact that the University did not follow the head coach's recommendation. (Board Decision, October 20, 1998, at 9–10).

6. Our scope of review regarding a Pennsylvania Labor Relations Board adjudication is limited to a determination of whether constitutional rights were violated, an error of law was committed or whether necessary findings of fact are supported by substantial competent evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

7. 43 P.S. § 1101.301(6).

classification.[8] The gravamen of Employer's argument is that *any* performance of supervisory duties renders an employee a supervisor within the meaning of § 301(6) of the Act.[9] In contrast, the Board asserts that the plain language of the Act and interpretive case law provide that the Board may examine whether an employee's performance of supervisory duties is sufficient to justify exclusion from a rank and file bargaining unit. We agree that such an inquiry is proper.

In support of its position, Employer relies on this Court's decision in *Employees of Carlynton School District v. Carlynton School District*, 31 Pa.Cmwlth. 631, 377 A.2d 1033 (1977). *Carlynton School District* involved the question of whether middle and elementary school principals were managerial or supervisory employees. Section 301(16) of the Act defines management level employees as "any individual . . . involved directly in the determination of policy or . . . the implementation thereof and shall include all employes above the first level of supervision." 43 P.S. § 1101.301(16). The Board found that the school district's principals should be classified as supervisors rather than managers on the basis that their occasional participation in policy-making functions was subject to review and approval of the central administration. *Id.* at 1034. We rejected the Board's argument and concluded that in determining an employee's managerial status, the Act does not provide that the Board may inquire into the amount of time an employee devotes to policy making activities or whether ultimate policy making authority is vested in an employee's superiors. *Id.* at 1035. Relying on our earlier decision in *AFSCME v. Pennsylvania Labor Relations Board*, 17 Pa.Cmwlth. 83, 330 A.2d 300 (1975), we held that employees are "properly classified as 'management level' employees where some, but not all, of their employment functions place them within the statutory definition of

management level employees" as set forth in § 301(16) of the Act. *Carlynton School District*, 377 A.2d at 1035.

Employer argues that our decision in *Carlynton School District* supports its position that an employee who performs any supervisory duties qualifies as a supervisor that must be excluded from the rank and file bargaining unit. Employer's interpretation of *Carlynton School District* completely ignores the fact that § 604(5) of the Act sets forth a balancing test which only applies to resolving an employee's *supervisory* status. *Id.* The Act does not contain a corollary provision to § 604(5) that provides such a balancing test in resolving an employee's managerial status. *Id.* at 1035–36. Given the absence of an equivalent balancing test, we concluded that the Act requires that performance of policy making or implementation functions classifies an employee as a manager, irrespective of the frequency of such activity. *Id.*

Applying this Court's entire analysis in *Carlynton School District*, the Board properly engaged in an assessment of the extent to which this group of head coaches performs supervisory duties. In conducting this assessment, it was entirely appropriate for the Board to consider such factors as frequency, duration and importance of the various supervisory duties performed by these head coaches. Although it may seem intuitive that a head athletic coach should exercise supervisory authority over his or her assistant coaches, the Board's undisputed findings of fact which are binding on this Court, demonstrate a significant degree of contradiction in the supervisory authority granted to the head coaches by their respective Universities. In resolving these contradictions, the Board exercised its discretion by concluding that the indicia of supervisory status were not present among this group of head coaches to a sufficient extent to warrant exclusion from the rank and file bargaining unit. Given the nature of this record, we

---

**8.** 43 P.S. §§ 1101.301(6) and 1101.604(5).

**9.** 43 P.S. § 1101.301(6).

shall defer to the Board's expertise in determining the appropriate membership of a bargaining unit where its conclusions are reasonable and not arbitrary or capricious. *Independent Association of Pennsylvania Liquor Control Board Employees v. Pennsylvania Labor Relations Board,* 48 Pa. Cmwlth. 342, 409 A.2d 532 (1980); *Pennsylvania Labor Relations Board v. AFSCME,* 20 Pa.Cmwlth. 572, 342 A.2d 155 (1975). Accordingly, we affirm the Board's order dated October 20, 1998.

## ORDER

AND NOW, this 10th day of August 1999, the order of the Pennsylvania Labor Relations Board, dated October 20, 1998, is hereby affirmed.