**WEST PERRY SCHOOL DISTRICT,**
**Appellant,**

v.

**PENNSYLVANIA LABOR RELA-TIONS BOARD and West Perry Educational Support Personnel Association, PSEA/NEA.**

Commonwealth Court of Pennsylvania.

Argued April 12, 2000.

Decided May 26, 2000.

Charles O. Beckley, II, Harrisburg, for appellant.

John B. Neurohr, Harrisburg, for appellee.

Thomas W. Scott, Harrisburg, for intervenor, West Perry Educational Support Personnel Assoc., PSEA/NEA.

Before KELLEY, J., FLAHERTY, J. (P.), and RODGERS, Senior Judge.

FLAHERTY, Judge.

The West Perry School District (District) appeals from an order of the Court of Common Pleas of Perry County (trial court) which affirmed a decision and order of the Pennsylvania Labor Relations Board (Board) which held that maintenance and custodial employees share a sufficient identifiable community of interest with the rank and file cafeteria employees to be included together in the same bargaining unit. The Board also determined that the cafeteria managers are not supervisory and, therefore, are not excluded from the bargaining unit with the rank and file cafeteria employees. We affirm the order of the trial court.

On May 13, 1997, the West Perry Educational Support Personnel Association, PSEA/NEA (Association) filed with the Board a petition for representation seeking to represent a bargaining unit of employees of the District comprised of all full-time and regular part-time, non-professional, blue-collar employees including, but not limited to, custodial, maintenance and cafeteria workers. Such a request is governed by the Public Employe Relations Act (PERA).[1] A hearing was conducted by a Board hearing examiner and an order directing the submission of an eligibility list was issued on November 6, 1997. The Board hearing examiner found as follows:

As to the cafeteria workers: the District operates cafeterias in five buildings. All of the cafeterias are managed by one food service director. Each cafeteria has its own manager on site. The cafeteria workers are paid hourly and have available two personal days and ten sick days. The food service director approves the use of personal days. The District uses a career ladder for the cafeteria workers which lays out the various levels and positions within the cafeteria. All full-time cafeteria work-

1. Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §§ 1101.101–1101.2301.

ers have a similar pension plan and similar medical benefits.

As to the cafeteria managers: the food service director is the one who hires, fires, promotes and disciplines workers. The cafeteria managers do not make decisions to hire, fire, promote or discipline employees. However, they do report problems to the food service director who then follows through with appropriate action. The cafeteria managers do complete evaluation forms for employees, but the food service manager does not make it a practice to go over these evaluations with the managers. The cafeteria managers perform the same functions as the cafeteria members and spend the majority of their day performing standard cafeteria work. On a day-to-day basis, the employees of the cafeteria generally know their assignments and do not need to be directed in their work activities by the cafeteria managers.

As to the maintenance workers: the maintenance workers are responsible for tasks such as welding, running equipment, electrical and plumbing work, mowing the grass, and other projects as assigned. The maintenance workers are paid hourly, and have the opportunity to work overtime. They are granted two personal days, vacation days, sick leave and an emergency day. They have Blue Cross/Blue Shield health insurance, a dental and vision plan, and a pension plan. There are no special requirements or any special certifications for the job. The maintenance workers occasionally work with the custodial workers on projects.

As to the custodial workers: the custodial workers are responsible for routine cleaning of the buildings, changing lights and anything else to do with cleaning or general labor in the District's buildings. They also mow the grass and work with the maintenance workers on projects.

They are paid hourly, have the opportunity to work overtime, and have personal and sick days. The custodial workers have the same health and pension plans as the maintenance workers.

The Board hearing examiner's order of November 6, 1997, directed submission of an eligibility list and determined that the appropriate bargaining unit included all full and regular part-time custodians, maintenance workers and cafeteria employees, including the cafeteria managers. On December 2, 1997, the Board issued an order and notice of election. An election was conducted and the Association won a majority of the votes. The Board issued a nisi order of certification on January 5, 1998, certifying the Association. On January 26, 1998, the District filed exceptions to the nisi order. On April 21, 1998 the Board issued a final order dismissing the District's exceptions. The District filed a notice of appeal to the trial court. On July 22, 1999, the trial court entered an order affirming the Board's final order. The District then appealed to this Court.

The District raises two issues for our review: whether the Board erred in determining that the District's maintenance and custodial employees shared an identifiable community of interest with the cafeteria employees so as to be certified in the same bargaining unit and whether the Board erred in determining that the District's cafeteria managers were not supervisors within the meaning of Section 301(6) of PERA and should be included in the bargaining unit.[2]

First, the District argues that the evidence of record does not support the determination that the maintenance and custodial employees share an identifiable community of interest with the cafeteria employees. The District points to the differences between the two categories of

2. Our review of this case is limited to determining whether constitutional rights were violated, whether the factual findings of the Board are supported by substantial evidence and whether the legal conclusions drawn from those findings are in accordance with the law. *Fraternal Order of Police v. Pennsylvania Labor Relations Board,* 557 Pa. 586, 735 A.2d 96 (1999).

workers such as: 1) they perform different job functions, 2) they work in separate areas, 3) they work under different supervision, 4) they work different schedules and hours, 5) they have different compensation and 6) they have different benefit packages. Because of these differences the District argues that there is no community of interest and it cites the Pennsylvania Supreme Court's decision in *FOP,* 557 Pa. at 586, 735 A.2d at 96 in support of its argument. The Board argues that it did not err in finding a community of interest because there are many similarities between the two groups such as: 1) each group performs blue-collar duties, 2) all full-time workers receive similar health and pension benefits, 3) each group receives personal and sick days, 4) each group is paid on an hourly basis and 5) the desire of the employees is to be in the same bargaining unit, and that these similarities provide an identifiable community of interest.

Section 604 of PERA provides that:

The Board shall determine the appropriateness of a unit which shall be the public employer unit or a subdivision thereof: In determining the appropriateness of the unit, the board shall: (1) Take into consideration but shall not be limited to the following: (i) public employes must have an identifiable community of interest, and (ii) the effect of over-fragmentization.

To determine whether employees share an identifiable community of interest, the Board should consider such factors as the type of work performed, educational and skill requirements, pay scales, hours and benefits, working conditions, interchange of employees, grievance procedures, and bargaining history. *FOP,* 557 Pa. at 586, 735 A.2d at 96. In addition, this Court in *Allegheny General Hospital v. Pennsylvania Labor Relations Board,* 14 Pa.Cmwlth. 381, 322 A.2d 793 (1974) held that employee desire was another factor to consider. An identifiable community of interest does not require perfect uniformity in conditions of employment and can exist despite differences in wages, hours, working conditions or other factors. *FOP,* 557 Pa. at 586, 735 A.2d at 96. This Court has accorded substantial deference to the expertise of the Board in making decisions on bargaining unit determinations. *West Hanover Township v. Pennsylvania Labor Relations Board,* 166 Pa. Cmwlth. 260, 646 A.2d 625 (1994). After review of the record we conclude that the Board did not err in finding an identifiable community of interest between the cafeteria workers and the custodial and maintenance workers.

Our conclusion that there is an identifiable community of interest rests upon the following facts from the record. First, the record indicates that together these groups petitioned the Board for representation as a group, and following the election the Association won the majority of the votes. Clearly, it was the desire of the majority of the employees in these groups to be represented by one union. Second, while the workers may perform different job duties in different areas, the duties they do perform are generally blue-collar in nature requiring no special certifications for the jobs and all duties are performed on the District's various properties. Finally, all employees are paid by the hour, are provided personal and sick days and receive similar health and pension benefits. We conclude that these similarities provide the identifiable community of interest contemplated by Section 604 of PERA.

The second issue raised by the District concerns whether the Board erred in determining that the District's cafeteria managers are not supervisors within the meaning of Section 301(6) of PERA and should be included with the rank and file workers in the bargaining unit.

Section 301(6) of PERA defines a supervisor as:

Any individual having authority in the interests of the employer to hire, transfer, suspend, layoff, recall, promote, dis-

charge, assign, reward or discipline other employees or responsibly to direct them or adjust their grievances; or to a substantial degree effectively recommend such action, if in connection with the foregoing, the exercise of such authority is not merely routine or clerical in nature but calls for the use of independent judgment. 43 P.S. § 1101.301(6).

In addition, Section 604(5) provides in pertinent part that: "In determining supervisory status the board may take into consideration the extent to which supervisory and non-supervisory functions are performed."

The District argues that the record is clear that the cafeteria managers are supervisors within the meaning of Section 301(6) of PERA. However, its argument ignores Section 604(5) of PERA and is based upon its preferred findings of fact and not the facts found by the hearing examiner. The District cites extensively to portions of the record that support its argument, but it does not refer to the hearing examiner's findings or argue that those findings are not supported by substantial evidence in the record.[3]

The Board argues that the hearing examiner's findings, which are supported by the record, indicate that the cafeteria managers are not supervisors within the meaning of Sections 301(6) and 604(5) of PERA because they perform mostly standard cafeteria work, are not involved in the interview process to hire employees, cannot fire employees, cannot give raises or promotions and cannot discipline employees. In addition, the managers perform standard cafeteria work for most of the work day.

■ This Court has held that the Board may examine whether an employee's performance of supervisory duties is sufficient to justify exclusion from the rank and file bargaining unit. In conducting such an examination, it is entirely appropriate for the Board to consider such factors as frequency, duration and importance of the various supervisory duties performed. This is based upon the balancing test found in Section 604(5). *State System of Higher Education v. Pennsylvania Labor Relations Board,* 737 A.2d 313 (Pa. Cmwlth.1999).

■ A mere job title or appellation, such as, supervisor or manager is not sufficient to overcome the actual duties performed as evidence of being a supervisor under Section 301(6) of PERA.[4] Based upon the hearing examiner's unchallenged findings of fact,[5] it is apparent that the cafeteria managers are not supervisors within the meaning of PERA, but instead were properly included in the rank and file. The cafeteria managers perform mostly standard cafeteria work and are not involved, to any extensive degree, in the hiring, firing, promotion, or discipline of employees. In addition, they do not often direct cafeteria workers in their assignments as the workers generally know their assignments and do not need to be directed in their work activities. Instead, they spend the majority of their work day doing standard cafeteria work. Therefore, the Board did not err in concluding that the cafeteria managers spent most of their time performing non-supervisory functions, making them rank and file employees not supervisors.

---

3. We remind the District that it is the function of the Board, not this Court, to resolve conflicts in the evidence presented, to assess credibility of witnesses, to resolve primary issues of fact and to draw the inferences from the facts necessary for a resolution of the complaint. *North Hills School District v. Pennsylvania Labor Relations Board,* 722 A.2d 1155 (Pa.Cmwlth.1999).

4. 43 P.S. 1101.301(6).

5. Undisputed findings of fact are binding on this Court. *State System of Higher Education,* 737 A.2d at 316.

Accordingly, the order of the trial court affirming the order of the Board which found an identifiable community of interest and concluding that the cafeteria managers are not supervisors under PERA is affirmed.

## *ORDER*

AND NOW, this 26th day of May, 2000, the order of the Court of Common Pleas of Perry County at docket No. 98–454, dated July 8, 1999, affirming the order of the Pennsylvania Labor Relations Board is affirmed.