**WESTMORELAND COUNTY,**
Petitioner

v.

**PENNSYLVANIA LABOR RELATIONS BOARD,**
Respondent.

Commonwealth Court of Pennsylvania.

Argued Dec. 8, 2009.

Decided Feb. 25, 2010.

Thomas P. Pellis, Greensburg, for petitioner.

Samuel B. Ickes, Harrisburg, for respondent.

Mark D. Bolkovac, Greensburg, for intervenor, Westmoreland Court Association of Professional Employees.

BEFORE: SIMPSON, Judge, and LEAVITT, and KELLEY, Senior Judge.

OPINION BY Judge SIMPSON.

In this labor relations case, we review whether the Pennsylvania Labor Relations Board (Board) erred by upholding a Nisi Order of Certification that expanded the collective bargaining unit of the Westmoreland Court Association of Professional Employees (Union) to include the positions of Adult Probation Supervisor, Juvenile Probation Supervisor, and Domestic Relations Case Establishment/Initiation Supervisor. Westmoreland County (County) asserts the jobs at issue are supervisory or managerial-level positions as defined by the Pennsylvania Public Employe Relations Act (PERA)[1] and are therefore excluded from the bargaining unit. The County further argues the Board's order encroaches on the exclusive authority of the President Judge of the Westmoreland County Court of Common Pleas to make personnel decisions. Discerning no error below, we affirm.

In 1992, the Union became the recognized bargaining representative for all full- and part-time professional employees directly involved with and necessary to the functioning of the Westmoreland County Common Pleas Court and who are hired, fired and directed by it. Reproduced Record (R.R.) at 11 a. The unit excluded law librarians, nonprofessional employees, management level employees, supervisors, first level supervisors, confidential employees and guards, as those terms are defined by PERA. *Id.*

In March, 2006, the Union filed a petition for representation (Petition) with the Board requesting that the following Domestic Relations' (DR) positions be accreted to the bargaining unit: Enforcement Officers, Conference Officers, and Attorneys. *Id.* The Petition also sought inclusion of Adult and Juvenile Probation Supervisors (collectively, Probation Supervisors) in the bargaining unit. *Id.* The County and the Union reached an agreement regarding many of the positions; however, they could not agree on the positions of Probation Supervisors and DR Case Establishment/Initiation Supervisor (Establishment Supervisor). The Petition affected seven Adult Probation Supervisors, three Juvenile Probation Supervisors and one Establishment Supervisor.

In April and July, 2008, a Board hearing examiner conducted hearings on the Petition. The hearing examiner subsequently entered an order directing submission of an eligibility list, concluding the positions at issue were neither supervisory nor managerial within the meaning of PERA. The County complied with the hearing examiner's order, and the Board thereafter issued an order directing an election to determine whether the positions at issue should be included in the bargaining unit. The election resulted in favor of representation, and a Board agent certified the Union as the exclusive representative of the expanded bargaining unit and issued a Nisi Order of Certification. The bargaining unit now includes:

All full-time and regular part-time professional employes who are directly involved with and necessary to the func-

---

1. Act of July 23, 1970, P.L. 563, *as amended,*    43 P.S. §§ 1101.101–1101.2301.

tioning of the courts and who are hired, fired and directed by the courts including but not limited to Title IV–D Attorneys, [DR] Enforcement and Conference Officers, Family Court and Orphan's Court Administrators, [DR] Lead Officers, Adult Probation employes and Adult Probation Supervisors; Juvenile Probation employes and Juvenile Probation Supervisors; [DR] employes and the [DR Establishment Supervisor]; and excluding the Adult Probation Technical Hearing Officer, Family Court Masters and Hearing Officers, [DR] PACSES Coordinator and all other employes, management level employes, supervisors above the first level of supervision, confidential employes and guards as defined by [PERA].

R.R. at 56a.

The County filed exceptions to the Nisi Order, contending the hearing examiner erred in concluding that the duties of Probation Supervisors and Establishment Supervisor (collectively, Supervisors) are neither supervisory nor managerial under PERA. The County further asserted the hearing examiner erred by disregarding the current Establishment Supervisor's testimony on the basis she described post-petition duties.

The Board adopted the hearing examiner's findings regarding the duties of Probation Supervisors. The Board, however, agreed with the County that the hearing examiner erred by failing to consider the duties of the current Establishment Supervisor. The Board found the rationale of disregarding post-petition duties was inapplicable here where the record lacked evidence showing the County changed the duties of the position after filing of the Petition in order to justify its inclusion or exclusion from the bargaining unit. *See In the Matter of the Employes of Elizabeth Twp.*, 33 Pa. Pub. Employee Rep. ¶ 33053 (2002), *aff'd sub nom, Elizabeth Twp. v. Pa. Labor Relations Bd.*, (Pa.Cmwlth., No. 1521 C.D. 2002, filed March 17, 2003). As a result, the Board made additional findings regarding the position of Establishment Supervisor and included it in the expanded bargaining unit.

The County now petitions this Court for review of the Board's order rendering the Nisi Order of Certification absolute and final.[2] The County presents the same arguments it presented below, and further contends the Board's order encroaches on the authority of the President Judge of Westmoreland County to make personnel decisions.

■ At the outset, we note the Board's expertise in the area of public labor law. *Berks/Lehigh Valley Coll. Faculty Ass'n v. Pa. Labor Relations Bd.*, 763 A.2d 548 (Pa.Cmwlth.2000). The Board has exclusive province over credibility determinations and evidentiary weight. *Pa. Ass'n of State Mental Hosp. Physicians v. Pa. Labor Relations Bd.*, 124 Pa.Cmwlth. 28, 554 A.2d 1021 (1989). So long as substantial evidence supports the Board's findings, we defer to the Board's conclusions if they are reasonable, and not arbitrary or capricious. *Sch. Dist. of Phila. v. Pa. Labor Relations Bd.*, 719 A.2d 835 (Pa.Cmwlth.

---

**2.** The Act of July 4, 2008, P.L. 286, removed jurisdiction over appeals from decisions of the Board from the courts of common pleas. Consequently, this Court now has first level appellate jurisdiction. *See* 42 Pa.C.S. §§ 763 (Jurisdiction of Appellate Courts—Direct appeals from government agencies) and 933 (Courts of Common Pleas—Appeals from government agencies). Our review is limited to determining whether the record supports the Board's findings and whether the Board committed an error of law or violated a party's constitutional rights. *State Sys. of Higher Educ. v. Pa. Labor Relations Bd.,* 737 A.2d 313 (Pa.Cmwlth.1999).

1998). In addition, we consider Board opinions interpreting PERA as persuasive authority. Cf. *Montgomery County v. Pa. Labor Relations Bd.*, 769 A.2d 554 (Pa. Cmwlth.2001) (hearing examiner's decision was consistent with prior Board decisions, which provided ample support for Board's decision assigning some employees to court-related bargaining unit while excluding others).

## I. Section 301(6) of PERA

In its first assignment of error, the County maintains Supervisors' positions are excluded under Section 301(6) of PERA, 43 P.S. § 1101.301(6). With emphasis added, that Section defines "supervisor" as:

> any individual having authority in the interests of the employer to hire, transfer, suspend, layoff, recall, promote, discharge, assign, reward or *discipline other employes* or responsibly to direct them or adjust their grievances; *or to a substantial degree effectively recommend such action, if in connection with the foregoing, the exercise of such authority is not merely routine or clerical in nature but calls for the use of independent judgment.*

The parties agree Supervisors lack direct authority to make the personnel decisions identified in Section 301(6). The issue thus becomes whether Supervisors responsibly direct other employees or effectively recommend personnel actions using independent judgment.

■ A party seeking to exclude a position from a bargaining unit has the burden of proving by substantial evidence the statutory exclusion applies. *Sch. Dist. of Phila. v. Pa. Labor Relations Bd.* The Board reviews actual job duties and will only consider written job descriptions to corroborate testimony of actual duties. *See Sch. Dist. of Twp. of Millcreek v.*

*Millcreek Educ. Ass'n*, 64 Pa.Cmwlth. 389, 440 A.2d 673 (1982) (noting that the purpose of unit clarification procedure is to determine whether job classifications belong in bargaining unit based upon actual job functions). In determining supervisory status, Section 604(5) of PERA authorizes the Board to "take into consideration the extent to which supervisory and nonsupervisory functions are performed." 43 P.S. § 1101.604(5); *W. Perry Sch. Dist. v. Pa. Labor Relations Bd.*, 752 A.2d 461 (Pa.Cmwlth.2000). It is therefore appropriate for the Board to consider such factors as frequency, duration and importance of the various supervisory duties performed. *W. Perry Sch. Dist.*

■ Moreover, job titles, such as supervisor or manager, are not sufficient to overcome the actual duties performed as evidence of being a supervisor under PERA. *Id.* In addition, the Board recognizes an employee is a supervisor under PERA if he or she has the authority to perform the functions of Section 301(6) and actually exercises that authority on a regular basis and uses independent judgment when doing so. *In the Matter of the Employes of Hempfield Sch. Dist.*, 30 Pa. Pub. Employee Rep. ¶ 54 (2007).

### A. Adult and Juvenile Probation Officers

■ The County argues the Board disregarded the daily functions of Probation Officers, which when properly considered exclude the positions from the bargaining unit. Citing *In the Matter of Employes of Lawrence County*, 31 Pa. Pub. Employee Rep. ¶ 31079 (2000), the County asserts it is not required to prove the Probation Supervisors perform all the duties identified in Section 301(6); rather, the County must show that they predominantly perform the duties of supervisors.

According to the County, the evidence shows that Probation Supervisors play a substantial role in the aforementioned personnel decisions, and their daily duties include monitoring subordinates' caseloads, ensuring staff coverage, training personnel, completing employee evaluations, assisting subordinates, and resolving personnel issues.

However, the County relies on general, non-detailed testimony of Probation Supervisors' respective directors that they perform the duties identified in Section 301(6). It failed to offer examples of how Probation Supervisors actually perform any of these functions. In other words, the County failed to offer details of how Probation Supervisors effectively make personnel recommendations, or assign, approve, or evaluate work, or train subordinates. The lack of detail is a basis upon which the Board may exercise its fact-finding discretion.

Moreover, the credible evidence supports the Board's conclusion Probation Supervisors act as lead workers who follow mandates of their respective department directors and the President Judge. First, Probation Supervisors testified they play no direct role in effectively recommending personnel decisions and have no authority to discipline employees. R.R. at *passim.* For example, Adult Probation Supervisor testified he assumed his position in 1999 and has never been involved in the discipline of probation officers within his department. *Id.* at 90a. Adult Probation Supervisor identified one instance where he discussed a probation officer's work performance with his director. *Id.* Nothing came of the discussion. *Id.* Probation Supervisor was not involved in the probation officer's subsequent discharge for unrelated reasons. *Id.* at 121 a–22a; 127a. Adult Probation also testified he lacks authority to discipline insubordinate probation officers. *Id.*

Adult Probation Supervisor further testified he cannot monetarily reward any probation officers, nor can he recommend a pay increase, promotion, or demotion. *Id.* at 93; 119a. Similarly, Adult Probation Supervisor did not have input into staff layoffs occurring in 2004. *Id.* at 92.

Juvenile Probation Supervisor assumed his position around 2004, and the Board hearings took place in 2008. In the four years since assuming his position, Juvenile Probation Supervisor has never been involved in the hiring, transferring, suspension, disciplining, promoting, or rewarding of probation officers. *Id.* at 129a–30a; 145a–46a; 153a–54a. Juvenile Probation Supervisor stated he knew of disciplinary problems within the department but has never been involved in their resolution. *Id.* at 131a; 155a.

The collective testimony cited above disproves the County's position Probation Supervisors effectively recommend personnel decisions to a substantial degree. The limited quantity and quality of the County's contrary evidence is insufficient to support reversal of the Board's decision. *See* Bd. Dec., 4/19/09, at 1; Hr'g Examiner Dec., 9/23/08, at 2–5; *Elser v. Unemployment Comp. Bd. of Review,* 967 A.2d 1064 (Pa. Cmwlth.2009) (findings of fact are conclusive on appeal where supported by sufficient credible evidence).

In addition, Probation Supervisors do not assign work to their subordinates, review it or pre-approve it. R.R. at 92a; 98a; 130a; 158a. The County employs a computer program which assigns casework based on geographic location and workload. *Id.* at 92a; 162a. Although conflicts may arise, the County offered no evidence suggesting how reassignments are made or any other evidence of how additional work is dispersed to the probation officers.

Probation Supervisors ensure cases are properly processed. If problems arise, however, Probation Supervisors notify their respective directors. *Id.* at 110a. In addition, at least two Adult Probation Supervisors and all Juvenile Probation Supervisors carry a caseload similar to their subordinates. *Id.* at 97a; 123a; 133a. Probation officers do not check-in with their respective Supervisors on a daily basis before · starting work. *Id.* at 120a; 158a.

Also, Probation Supervisors play no responsible role in assisting their subordinates in cases of probation violations. *Id.* at 109a. When a probation officer learns an individual violated the terms of his or her parole or probation, the officer files a violation notice and proceeds to court. *Id.* at 101a–102a. Supervisors only review the files for accuracy. Further, the department director provides final authorization for the release of individuals. R.R. at 102a. Juvenile Probation Supervisor testified probation officers do not seek his approval before detaining juveniles. *Id.* at 160a.

As for personnel matters, Probation Supervisors testified employees call into a central number to report absences from work; they fill in for absent employees due in court, or may find a temporary replacement if the absence is extended. *Id.* at 97a; 100a–01a; 114a–15a; 148a–50a. Probation Supervisors review vacation requests and expense vouchers, but the department directors have final approval. *Id.* at 98a–100a; 132a–33a; 141a.

Probation Supervisors testified they have no power to adjust employee grievances even though the collective bargaining agreement provides supervisor review is the first step in the grievance procedure. *Id.* at 93a–96a; 116a; 131a; 132a. The Board holds that in order for the statutory exclusion to apply, a supervisor's grievance

resolution must bind the employer to a specific settlement. *In the Matter of Hempfield Sch. Dist.* Moreover, even though Probation Supervisors report misconduct, the mere obligation to do so is not a basis to exclude a position from a collective bargaining unit. *Phila. Housing Auth. v. Pa. Labor Relations Bd.*, 32 Pa. Pub. Employee Rep. ¶ 32046 (2001).

Similarly, the Adult Probation Supervisor testified that he completes performance evaluations for probation officers; however, the director can and has made changes to the evaluations. R.R. at 108a; 119a. The Juvenile Probation Supervisor testified that his office has not conducted personnel evaluations for at least three years. *Id.* at 132a. Probation Supervisors testified that personnel decisions are not based on the evaluations and that the evaluations are done solely to comply with state grant requirements. *Id.* at 119a; 154a. In its decisions, the Board holds that in order for the completion of personnel evaluations to support a supervisory exclusion, the evaluations must be given controlling weight and result in either an award or sanction. *In the Matter of Hempfield Sch. Dist.* Here, the evidence shows personnel decisions are not used to determine pay increases, decreases, promotions or demotions.

In sum, the Board found the testimony of Probation Supervisors credible and rejected the testimony of the department directors. *Pa. Ass'n of State Mental Hosp. Physicians.* The County was the burdened party; however, taken as a whole, the County's evidence failed to persuade the fact-finder that Probation Supervisors have the authority to perform the functions of a supervisor under Section 301(6) of PERA or actually exercise that authority on a regular basis. Instead, the accepted evidence contradicts the County's position Probation Supervisors predomi-

nately perform the duties of a supervisor. *W. Perry Sch. Dist.* (upholding Board's conclusion employees who spent majority of time performing non-supervisory duties were properly included in bargaining unit). In view of the deference afforded the Board's interpretation of the statute it is charged with interpreting, we discern no error in the Board's conclusion the Probation Supervisors' positions are not excluded from the bargaining unit under Section 301(6) of PERA.[3]

### B. Establishment Supervisor

In its decision, the Board made its own findings regarding the position of Establishment Supervisor based on the testimony of the individual who currently holds the position. Relevantly, the Board found the Establishment Supervisor has no authority to hire, transfer, suspend, lay off, discharge, discipline or reward any employees in DR, nor does she effectively recommend any personnel actions. The Board further found the current Establishment Supervisor has never been involved in the establishment of DR policies.

Although it previously took a somewhat different position,[4] the County now contends the Board erred in relying on the testimony of the current Establishment Supervisor. It asserts the Board disregarded the duties the current Establishment Supervisor will perform. The current Establishment Supervisor worked the position for only 18 months before her testimony. The County therefore contends the opportunity to perform many of her job duties had not yet arisen. The County urges us to look at the duties of the current Establishment Supervisor's predecessor to determine whether the position is supervisory under PERA.

Significantly, the structure of DR changed before Establishment Supervisor assumed her position. The head of DR is the director, who reports to the President Judge. Previously, the County maintained one deputy director position below that of director: the enforcement deputy director. Current Establishment Supervisor's predecessor did *not* report to the enforcement deputy director; she reported to the director. The enforcement deputy director testified to current Establishment Supervisor's predecessor's duties.

Prior to Establishment Supervisor assuming her position, however, the County added a second deputy director position: an establishment deputy director. Current Establishment Supervisor reports to the establishment deputy director. On the basis of this structural change alone, a reason exists to accept the current Establishment Supervisor's testimony over that of the enforcement deputy director to whom she does not report.

---

**3.** The County also contends Probation Supervisors train subordinates. This argument is also based on the non-specific testimony of Supervisors' respective directors. The County offered no testimony as to how Probation Supervisors allegedly train probation officers, what is needed to train employees, or if any advanced knowledge is required. The only testimony regarding specific types of training concerned weapons training. Juvenile Probation Supervisor testified he trains both adult and juvenile probation officers in handling of weapons. Reproduced Record (R.R.) at 147a–48a. On the gun range, however, the range instructor, who may be below Juvenile Probation Supervisor in rank, is in charge. R.R. at 155a–56a.

**4.** As discussed earlier with regard to exceptions to the Nisi Order of Certification, the County maintained the hearing examiner erred by failing to consider the duties of the current Establishment Supervisor. The Board agreed, and it made additional findings. Now, on appeal from the Board's findings, the County contends the Board erred in relying on the testimony of the current Establishment Supervisor.

The County offered the testimony of the enforcement deputy director to contradict current Establishment Supervisor's testimony that she plays no role in making personnel decisions or office policies. However, the evidence offered by the County does not clearly explain its contention that the structural change has no effect on the duties of current Establishment Supervisor. So, for example, if the current Establishment Supervisor is making personnel and policy decisions, why did the County create an establishment deputy director position to oversee her? What are the duties of the new establishment deputy director if current Establishment Supervisor remains responsible for personnel decisions? The lack of explanation tends to minimize the County's attack on the Board's fact-finding.

Furthermore, we cannot agree that the Board erred in considering the current Establishment Supervisor's testimony because she did not perform many of her job duties prior to her testimony. The current Establishment Supervisor testified she assumed her position approximately 18 months before the Board hearing. The County contends she was not confronted with many of her job duties in that time.

As noted above, Section 604(5) of PERA authorizes the Board to "take into consideration the extent to which supervisory and nonsupervisory functions are performed." 43 P.S. § 1101.604(5). As such, the Board may consider such factors as frequency, duration and importance of the various supervisory duties performed. *W. Perry Sch. Dist.*

Here, current Establishment Supervisor did not make *any* personnel decisions in the 18 months before her testimony. Current Establishment Supervisor should have completed personnel evaluations within those 18 months, and other evidence proved personnel decisions were made without her knowledge and input during that time. *See* R.R. at 267a–68a. The County failed to present evidence of the frequency of such personnel decisions to substantiate its claim there was not enough time for current Establishment Supervisor to encounter these duties.[5]

The facts presented here closely resemble those in *West Perry School District*. There, the Board determined that the school district's cafeteria managers were not supervisory employees and thus were not excluded from the bargaining unit comprised of rank and file cafeteria workers. The cafeteria managers reported problems to the food service director and completed employee evaluation forms. On a day-to-day basis, the cafeteria workers knew their job assignments and, cafeteria managers did not direct their work activities.

In affirming the Board's order, we recognized that the cafeteria managers performed mostly standard cafeteria work and were not involved, to any extensive degree, in the hiring, firing, promotion, or discipline of employees. The cafeteria managers did not direct the workers in

---

**5.** Current Establishment Supervisor testified that she lacks authority to effectively recommend any personnel actions identified in Section 301(6) of PERA. R.R. at 267a–76a. She has not participated in DR policy making decisions and does not make job assignments. *Id.* at 273a. She recalled one instance where she reported a disciplinary problem but was not involved in the disciplinary action itself. *Id.* at 268a. She was unaware her predecessor played a more active role in disciplinary investigations and office training. *Id.* at 274a; 276a. She further stated she does not meet with subordinates to discuss their work and has never trained new employees. R.R. at 272a. The Board found current Establishment Supervisor credible.

their assignments because no direction was needed.

■ Similarly, here the County failed to persuade that Supervisors perform predominantly supervisory functions. The credited evidence shows Supervisors do not effectively recommend any personnel actions with any degree of frequency, if at all. Many of the duties of Supervisors appear routine in nature. Like the cafeteria managers in *West Perry School District,* Supervisors' subordinates know their job assignments and complete their daily tasks without instruction from Supervisors. Thus, we discern no error in the Board's order concluding the Supervisor positions are not excluded from the bargaining unit under 43 P.S. § 1101.301(6).[6]

## II. Section 301(16) of PERA

■■ The County further contends Supervisors' positions are excluded from the bargaining unit as management level employees. With emphasis added, Section 301(16) of PERA, 43 P.S. § 1101.301(16), defines a "management level employe" as

*any individual who is involved directly in the determination of policy or who responsibly directs the implementation thereof* and shall include all employes above the first level of supervision.

If employees meet only one part of the test, they will be considered managerial.

*Pa. Ass'n of State Mental Hosp. Physicians.* Moreover, employees may be classified where some, but not all, of their employment functions placed them with the statutory definition of management level employees. *Employees of Carlynton Sch. Dist. v. Carlynton Sch. Dist.,* 31 Pa.Cmwlth. 631, 377 A.2d 1033 (1977). Similarly, employees will not lose their managerial status simply because other individuals superior to them in management review their actions. *Id.*

In *Pennsylvania Association of State Mental Hospital Physicians,* we cited with approval the Board's test for determining whether employees are directly involved in the determination of policy:

[a]ny individual who is directly involved in the determination of policy would include not only a person who has authority or responsibility to select among options and to put proposed policies into effect, but also a person who participates with regularity in the essential process which results in a policy proposal and a decision to put such proposals into effect.

544 A.2d at 1023 (quoting *Horsham Township,* 9 Pa. Pub. Employee Rep. ¶ 9151 at 327 (1978)).

■ Moreover, this Court recognizes that in order to be excluded from a bar-

---

**6.** The County's reliance of *In the Matter of Churchill Area School District,* 30 Pa.Cmwlth. 413, 374 A.2d 1000 (1977), does not compel a different result. In that case, this Court determined the Board's sole finding regarding the coordinator of athletics' duties were woefully inadequate where the record contained over 200 pages of testimony describing the position. In a single relevant finding, the Board found the coordinator taught part of the school day and acted as coordinator the rest of the day. In its discussion, the Board noted the coordinator lacked the authority to make the personnel decisions listed in 43 P.S. § 1101.301(6), above, and at most, recom-

mended candidates for vacant positions. We determined the Board's consideration of two duties the coordinator did not perform was an unsatisfactory review of the record inasmuch as witnesses testified in great detail as to his duties.

*Churchill School District* is factually distinguishable. Here, the Board's findings track the testimony of Supervisors with regard to their actual job duties. Moreover, *Churchill School District* does not stand for the proposition that the Board must look beyond the statutorily identified duties in PERA to determine whether an employee is a supervisor.

gaining unit as management level employees who responsibly direct the implementation of policy, employees must either engage in meaningful participation in the development of the employer's policy or must ensure fulfillment of that policy by concrete measures. *See Sch. Dist. of Phila. v. Pa. Labor Relations Bd.* (recognizing employees will be considered managerial if they are directly involved in implementation of policy and regularly participate in the policy proposal process); *In the Matter of Employes of Luzerne County Cmty. Coll.,* 37 Pa. Pub. Employe Rep. ¶ 47 (2006).

Here, the Board determined the County failed to provide examples of specific court policy Supervisors developed or implemented. We cannot disagree with the Board's conclusion. The County's witnesses merely stated their reliance on Supervisors to implement department policies; the County offered no references to concrete measures taken by Supervisors.[7] The evidence does not indicate that Supervisors participate directly in the policymaking process or have any significant impact on the formulation or implementation of management policy. The lack of detail in the County's evidence supports the Board's exercise of its fact-finding discretion.

## III. Common Pleas Court's Exclusive Authority over Personnel Decisions

■ In its final assignment of error, the County asserts the Board's order encroaches upon the authority of the President Judge of Westmoreland County to make personnel decisions. It is undisputed the Commonwealth's courts maintain exclusive authority over personnel decisions of court-related employees.

In *Sweet v. Pennsylvania Labor Relations Board,* 457 Pa. 456, 322 A.2d 362 (1974), our Supreme Court first recognized that the courts are "employers" for collective bargaining purposes because they have certain inherent rights and powers to do all things necessary for the administration of justice, including the power to select persons who assist in the performance of judicial duties. Subsequent decisions have made clear that neither local governments nor the Board's interpretation of PERA may infringe upon a court's authority to control court-related personnel. *Bradley v. Pennsylvania Labor Relations Bd.,* 479 Pa. 440, 388 A.2d 736 (1978); *Ellenbogen v. County of Allegheny,* 479 Pa.

---

7. For example, the director of Adult Probation testified as follows:

Q. [County's counsel:] Now, is it a fair statement that these management meetings are for management, right?
A. Yes.
Q. And they deal with confidential issues, at times, in your office?
A. At times.
Q. And they deal with policy in your office?
A. They deal with policy.
Q. Do they deal with personnel issues in your office?
A. Yes.
Q. And the Adult Probation Supervisor and the other people on that line are people that participate in those meetings with you?

A. That's correct.
Q. And you rely upon these people to implement the policy in your office; is that a fair statement?
A. That's fair.
R.R. at 178a. *See also* R.R. at 200a–01a (it is responsibility of Adult Probation Supervisors to implement policy in the department) and 202a (agreeing committees are formed to create office policies). The directors of Juvenile Probation and DR gave similar testimony. R.R. at 211a–213a; 221a; 223a; 278a. However, no director provided any policies which were developed by individuals at the supervisor level or any department policies which the supervisors are charged with implementing.

429, 388 A.2d 730 (1978); *Matter of Antolik,* 93 Pa.Cmwlth. 258, 501 A.2d 697 (1985); *Eshelman v. Comm'rs of County of Berks,* 62 Pa.Cmwlth. 310, 436 A.2d 710 (1981); *Beckert v. Am. Fed. of State, County & Mun. Employees,* 56 Pa. Cmwlth. 572, 425 A.2d 859 (1981).

Initially, the Union contends the County waived consideration of whether the Board's order encroaches on the President Judge's authority over personnel decisions where it did not raise the issue in its exceptions to the Nisi Order of Certification. In response, the County acknowledges it did not preserve the issue by way of separate heading but contends it wove the argument throughout its exceptions.

▉ Notably, there was no evidence from the court administrator or any judicial officer that inclusion of the employees in the bargaining unit or their status under PERA had any affect whatsoever on the administration of justice. Indeed, there was no direct evidence from any source on the separation of powers issue. Not surprisingly, the Board made no findings on the issue. Under these circumstances, the County fails to convince us that it invited the attention of the fact-finder to this issue; accordingly, the issue is waived. Pa. R.A.P. 1551 ("[n]o question will be heard or considered by the court which was not raised before the government unit. . . ."); *Pettit v. Namie,* 931 A.2d 790 (Pa. Cmwlth.), *appeal denied,* 2007 Pa. Lexis 2567 (Pa., No. 385 WAL 2007, filed December 4, 2007) (issue of prejudgment interest waived where not developed in any manner which invited the thoughtful attention of the trial court, and the court did not address the issue).

Were we to reach the merits of the issue, we would still affirm the Board. The County urges that the Board's order requires the President Judge of Westmoreland County to divest himself of the power to make personnel decisions in order for the positions at issue to be considered supervisors under PERA. This argument presupposes that the President Judge wants the eleven employees classified as supervisors under PERA, or wants them excluded from the collective bargaining unit. As noted above, however, the County did not establish these facts at the hearing. Therefore, the County failed to establish the factual predicate for its separation of powers challenge.

▉ In addition, we are reminded in *Matter of Antolik,* 501 A.2d at 699, that collective bargaining on behalf of the judiciary by county personnel pursuant to PERA is constitutional so long as no "genuine threat" to the administration of justice is posed.[8] The County, however, failed to show the Board's order poses a threat to the court's exclusive authority.

For all the foregoing reasons, we affirm.

### ORDER

**AND NOW,** this 25th day of February, 2010, the order of the Pennsylvania Labor Relations Board is **AFFIRMED.**

DISSENTING OPINION BY Judge LEAVITT.

Respectfully, I dissent. The Pennsylvania Labor Relations Board (Board) construes "supervisor" so narrowly that virtually no person, save the President Judge of Westmoreland County, qualifies for the position. This error was then compounded

---

8. Our Supreme Court recently reviewed the separation of powers doctrine in *Jefferson County Court Appointed Employees Association v. Pennsylvania Labor Relations Board,* 603 Pa. 482, 985 A.2d 697 (2009). Upon review, the Court's decision in *Jefferson County* does not impact our decision.

by the Board's failure to consider the evidence produced by the County.

Section 301(6) of the Public Employe Relations Act[1] defines "supervisor" as

*any individual having authority in the interests of the employer to hire,* transfer, suspend, layoff, recall, promote, discharge, assign, reward or discipline other employes or responsibly to direct them or adjust their grievances; *or to a substantial degree effectively recommend such action,* if in connection with the foregoing, the exercise of such authority is not merely routine or clerical in nature but *calls for the use of independent judgment.*

43 P.S. § 1101.301(6) (emphasis added). Here, the employees with the title "supervisor" do not directly hire or fire other employees; that is done by the president judge. However, they make these types of personnel recommendations, and it is their job responsibility to do so. The Board held, however, that their recommendations must be accepted in order to be "effective." This is an unworkable understanding of "effective."

First, it means that no job can be a supervisory job unless, and until, the County finds it necessary to take personnel action. Only then could it be established whether the supervisor's recommendation was followed.

Second, the Board's construction of "effective" has that adjective eclipsing the operative word "recommendation." The Board reads "effective recommendation" to mean "making the decision," which is not consistent with the actual words chosen by the legislature.

The Board must look behind the title "supervisor" to determine whether the position is worthy of the title, and this is the significance of "effective recommendation."

Whether a supervisor makes "effective recommendations" can be determined by examination of the job duties. For example, employees may snitch on, and complain about, their co-workers; they may even be encouraged to do so by the employer. However, such "recommendations" are not "effective" but, rather, gratuitous. It is only where an employee has the duty to participate in personnel matters in a way that requires the exercise of discretion that the employee can be said to be a supervisor. A clerk whose job it is to record the work days and hours of other employees is not a supervisor because the job does not require the exercise of discretion.

Here, the Board found that because the Juvenile and Adult Probation Supervisors and the Domestic Relations Establishment/Case Initiation Supervisors made recommendations that were not necessarily accepted by their superiors, they did not make "effective recommendations." Under the Board's narrow view of Section 301(6), an "effective recommendation" must have "controlling weight." *See, e.g., City of Bethlehem,* 19 PPER P19205 (Final Order, 1988). This interpretation of "supervisor" deprives the president judge of the ability to reject the supervisor's recommendation, an absurd result. Further, this interpretation is not consistent with this Court's precedent.

In *In the Matter of the Employees of Carlynton School District,* 31 Pa.Cmwlth. 631, 377 A.2d 1033, 1035 (1977), this Court established that the fact that a supervisor reports to a higher level of management does not mean that the supervisor is not a member of management. In that case, public school principals and assistant principals wanted to be included in a collective bargaining unit that represented teachers.

---

**1.** Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. § 1101.301(6).

In support, they argued that their policy decisions were "subject to rejection, change, approval, or acceptance" by their superiors. *Id.* This Court rejected the principals' argument, noting that the defining characteristic of a supervisor is the duty to recommend, regardless of whether that recommendation is followed. A recommendation is not a mandate; it is simply advice.

Here, the Board did not follow the principle established in *Carlynton* with respect to the meaning of "supervisor." For example, Gary Miscovich, an Adult Probation Supervisor, acknowledged that it is his job responsibility to recommend disciplinary action for problem probation officers. Reproduced Record at 110a. In one instance, he recommended that a problem employee be disciplined, and in response, his superior, Director Andrew Urban, investigated. Ultimately, Urban decided to dismiss the problem employee.

The Board found that because Miscovich's precise recommendation to Urban was discipline, not termination, he did not give an effective recommendation. Under the Board's logic, Miscovich and any supervisor must provide the final word in any given personnel matter. However, as *Carlynton* established, management can consist of several layers of persons with supervisory responsibility.

Under *Carlynton,* the important factor is whether the employee has the responsibility to make recommendations in personnel matters. Probation supervisors, as acknowledged by Miscovich, have this responsibility. The existence of their responsibility was confirmed by Director Urban, who testified that probation supervisors are required to report disciplinary problems, to assist in the personnel investigations and to recommend appropriate action.

Moreover, the Board ignored other uncontradicted evidence that the employees in question were supervisors. For example, Director Urban testified that the probation supervisors and the domestic relations supervisors are responsible for seeing that county employees comply with the law and with the County's policies. They oversee the accuracy of the work of probation officers and caseworkers. He further testified that supervisors assist the directors in dealing with disciplinary issues on a case-by-case basis. It was also unrebutted that supervisors handle a variety of personnel matters, such as ensuring appropriate staffing in the office to account for both anticipated and unanticipated absences; the training of new probation officers and caseworkers; and doing job performance evaluations.

The Board simply ignored these additional personnel responsibilities. The Board did, as it had to, acknowledge that supervisors made recommendations in disciplinary matters, such as in the case of Miscovich. Nevertheless, the Board, without making any reference to the record, then concluded that "the employes at issue do not even recommend, let alone effectively recommend" discipline. Board's Final Order at 9. First, this conclusion is directly contrary to the Board's acknowledgment that supervisors do make recommendations. Second, the Board mistakenly believes that to be effective, recommendations in matters of employee discipline must be given "controlling weight."

In *In the matter of: Appeal of Churchill Area School District,* 30 Pa.Cmwlth. 413, 374 A.2d 1000, 1003 (1977), this Court held that the Board conducted "an unsatisfactory factual review of this record" where it ignored testimony about employees' job duties, and based its decision on two facts: that the employees did not make final per-

sonnel decisions and that their recommendations were not always heeded by their superiors. The Board's final order in this case evidences the same myopic flaw: the Board ignored ample evidence of supervisory responsibilities to focus only on the ability to have the last word in matters of discipline.

For these reasons, I would vacate the Board's order and remand the matter, directing the Board to consider *all* the evidence, using an appropriate understanding of "effective recommendation." It is the responsibility to make a recommendation that is paramount, not whether the recommendation is accepted.